Edward J. McLaughlin, J.
This is a hearing pursuant to section 754 of the Family Court Act to determine an appropriate disposition for Anthony J., a 14-year-old who needs supervision and treatment.
The facts of this case are undisputed. The petitioner, attendance officer for the Syracuse school district, filed a verified petition alleging that the respondent was a person in need of supervision (hereinafter referred to as PINS) based upon habitual truancy. At the fact-finding hearing the respondent admitted that he was habitually truant during the period alleged in the petition. The court adjourned the matter for a dispositional hearing and report from the Probation Department concerning their investigation of the respondent and their recommendation based on that investigation.
*35 At the dispositional hearing there were two witnesses: the probation officer who undertook the social investigation and a representative of the Division for Youth. The probation officer, in a written report, offered to the court as an exhibit, which the court received, recommended that the respondent be found in need of treatment and supervision. The report further recommended that the treatment be rendered to the respondent by placing him pursuant to section 756 of the Family Court Act at the Tryon School, a Division for Youth facility (Executive Law, tit 3, § 510). The probation officer then testified that the respondent was in need of supervision and treatment, but modified his written report as to the facility where the treatment should be rendered. His new recommendation was that the respondent should be placed on probation, pursuant to section 757 of the Family Court Act, with a condition that probation being that Anthony spend a period of time in a Division for Youth facility at South Lansing (Executive Law, tit 2, § 502). The Division for Youth representative testified that it would accept the respondent for treatment at South Lansing, consent being a prerequisite for such a disposition (22 NYCRR 2506.6 [14]). The division representative further testified that the division had no other facility, either under title 2 or title 3 of the Executive Law, that offered a suitable treatment program for the respondent. Neither witness testified that a discharge with a warning (Family Ct Act, § 754), a suspended judgment (Family Ct Act, § 755), a "non institutional” probation (Family Ct Act, § 757), or a placement at a private institution (Family Ct Act, § 756), would be appropriate. In short, the only dispositional recommendation that the court received was for "institutional” probation at South Lansing.
At the conclusion of the petitioner’s case, the Law Guardian moved for a dismissal of the petition on the ground that the respondent would refuse probation. He alleged that since there was no other evidence before the court with regard to a disposition, the petition as a matter of law must be dismissed. The motion for dismissal was denied. The respondent rested without offering any evidence and renewed his motion for dismissal on the same ground. On the basis of the evidence before it, the court found the respondent to be in need of treatment and supervision (Family Ct Act, § 743).
Having made this finding of fact, the problem faced by the court is whether, upon the evidence before it and confronted *36 with the respondent’s refusal to accept probation, may it adjudicate Anthony J. a PINS. The problem in the instant case contains two interrelated issues: (A) whether a juvenile can refuse probation; and (B) whether a juvenile can be adjudicated a PINS based solely upon a need for a particular course of treatment without the additional finding that such treatment is available.
A. PROBATION
The first issue, whether a juvenile can refuse probation, is a question of first impression. The respondent refuses to accept probation and insists that it cannot be involuntarily imposed upon him. His position is simply, that since probation is a privilege, offered to an individual as an alternative to a harsher disposition, it need not be accepted.
Probation comes from the Latin word probare which means to "test or prove”. In the criminal realm it is considered an alternative to imprisonment, and is offered to those who, in the court’s estimation, need not be confined. Generally it is a written agreement in which the defendant promises to conform to a certain standard of behavior in consideration for his release. The defendant understands that a violation of the terms may lead to a revocation of probation and the imposition of any sentence that could have been imposed at the time of conviction. (See CPL 410.10; Family Ct Act, § 779.) The decision as to who will be offered a sentence of probation rests entirely with the court. It is a privilege accorded in the exercise of its broad discretionary powers. It is not a right. (People v Oskroba, 305 NY 696.)
The major difference between probation for a defendant over the age of 21 and for a juvenile is that a juvenile, but not an adult defendant can be confined (Penal Law, § 65.10). A juvenile can be required to reside at an institution for a period of up to two years (22 NYCRR 2506.6 [14]). This difference goes to the very essence of probation as a type of voluntarily agreed upon contract, and as such is not consistent with its aims and goals. This court seriously questions the policy behind a privilege which can be defined not only in terms of incarceration, but incarceration that could exceed the presumably more serious disposition of direct placement which can only be made for a maximum initial 18-month period (Family Ct Act, § 756). That there are no criminal cases in which a defendant has refused probation is not surprising; the alterna *37 tive would be commitment to a penal institution. However, People v Marino (51 Misc 2d 238), a case involving a 17-year-old who formally waived youthful offender treatment is applicable by analogy. The defendant, having initially refused such consideration, moved for youthful offender treatment after conviction. In denying his request the court stated (p 239): "Youthful offender treatment is given as a matter of discretion by the court, and is a matter of privilege. It is not given as a matter of right. The defendant cannot be compelled against his consent to be tried under youthful offender procedures if he chooses to stand trial in the conventional manner.”
This court similarly holds that since probation is a voluntary agreement, offered by a court in its discretion as a privilege, it can be refused.
The issue of whether a juvenile can refuse probation would never have arisen if South Lansing were authorized to receive juveniles by way of direct placement since direct placement cannot be refused. However, direct placement may be made only to title 3 facilities (Executive Law, § 510). South Lansing is a title 2 facility (Executive Law, § 502) which is authorized to receive juveniles only if placed there as a condition of probation. While the distinction between title 2 and title 3 facilities may be more in form than substance, it would be an abuse of discretion to directly place Anthony J. at South Lansing in light of the explicit language of the Executive Law. Relief, in this respect, must come from the Legislature.
B. ADJUDICATION OF PINS
The only evidence as to an appropriate disposition for the respondent was a recommendation for "institutional” probation. The court upheld the respondent’s right to refuse probation. The practical effect of this holding is to negate all of the evidence before the court as to a disposition. While a court has great flexibility in its juvenile dispositions, its discretion is not unfettered. It may not enter a disposition without evidence as the appropriateness of such an order (see Matter of Richard C., 43 AD2d 862) in which a training school placement was reversed since it was made without sufficient knowledge of whether needed therapy was available. Since a disposition may only be based upon the evidence before the court, and since no evidence has been presented to it, the court is precluded from entering any dispositional order at all.
Even though a disposition may not be entered, may An *38 thony J. nevertheless be adjudicated a PINS? This is a complex question. A literal reading of the apposite statutes indicates that if the allegations of a PINS petition are established the court shall enter an order finding the respondent to be a PINS (emphasis added). (Family Ct Act, § 752.) The allegations of a PINS petition must contain certain acts or conduct on the part of the respondent which constitutes ungovernability, incorrigibility, disobedience, or truancy. It must further allege that the respondent requires supervision or treatment (Family Ct Act, § 732). A petition need not allege that such treatment exists.
In the instant case it was determined at the fact-finding hearing that the respondent was habitually truant. At the dispositional hearing it was found that Anthony J. required supervision and treatment. Since the allegations of the petition were established, it would appear that an order of PINS should be entered (Family Ct Act, § 752). However, section 754 of the Family Court Act mandates the court to enter an order of disposition upon an adjudication of PINS. This is not possible in the instant case since there is no evidence before the court that a suitable disposition exists. Therefore, no disposition can be entered. The court faces a classic dilemma. If it does not enter an order of PINS it ignores the mandate of section 752 of the Family Court Act; if it does enter an order of PINS it ignores section 754 of the Family Court Act. Given these two alternatives, would it be more reasonable to find the respondent a PINS without being able to enter a disposition and thus provide treatment, or would it be better to dismiss the petition altogether?
By the use of the mandatory word "shall” in both sections 752 and 754 the Legislature has presumed that for every finding of a need for treatment there would be an appropriate dispositional order which could be entered. Such is not always the case. (See Matter of Anonymous, 43 Misc 2d 213; Matter of Neil M. v Gregory M., 71 Misc 2d 396.) Nor is it the case here. Where there is a bifurcation between a finding of a need for treatment and a showing that such treatment exists, as in the case at bar, it has been held to be a violation of the Fourteenth Amendment (US Const, 14th Amdt) to adjudicate a child a juvenile delinquent or a PINS. (Martarella v Kelley, 349 F Supp 575.) As the Martarella court said (p 600): " 'A new concept of substantive due process is evolving in the therapeutic realm * * * Its implication is that effective treat *39 ment must be the quid pro quo for society’s right to exercise its parens patriae controls. Whether specifically recognized by statutory enactment or implicitly derived from the constitutional requirements of due process, the right to treatment exists.’ ”
That the instant petition must be dismissed does not rest solely upon constitutional considerations; there are strong policy reasons as well. The effect of labeling a child a juvenile delinquent or PINS was described by the President’s Commission on Law Enforcement and Administration of Justice, Task Force Report on Juvenile Delinquency and Youth Crime (1967), at page 7: "Official action may actually help to fix and perpetuate delinquency in the child through a process in which the individual begins to think of himself as delinquent and organizes his behavior accordingly. That process is further reinforced by the effect of labeling upon the child’s family, neighbors, teachers, and peers, whose reactions communicate to the child in subtle ways a kind of expectation of delinquent conduct.”
When a juvenile is provided with treatment, presumably the positive effect of such a disposition would outweigh the negative aspects of judicial intervention. But without such treatment, it would be positively harmful to label a child either a juvenile delinquent or a PINS. Since there has been no showing that treatment exists for the respondent, the court will not countenance the official imprimatur of judicial action upon Anthony J.’s life.
Consistent with the purpose of article 7 of the Family Court Act, policy considerations, and constitutional requirements, the court has no alternative but to dismiss the petition.
Ordered that the petition be and the same is hereby dismissed in accordance with the above decision.