[No. A048369. First Dist., Div. Four. Apr. 10, 1991.]

In re MARCELLUS L., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MARCELLUS L., Defendant and Appellant.

136

COUNSEL

Christopher E. Judge for Defendant and Appellant.

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff and Albert J. Menaster, Deputy Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan Helfman and Morris Beatus, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ANDERSON, P. J.—Today we are called upon to decide whether a minor who is on probation with a search condition has standing to object to the reasonableness of a search conducted by an officer who is unaware of the minor's probationary status and its search condition.

By supplemental petition the Contra Costa County District Attorney alleged that ward Marcellus L. (minor) was in felonious possession of cocaine on November 17, 1989, and previously had been found to have committed a felony (sale of a controlled substance). The minor moved to suppress the cocaine evidence as the fruit of an unreasonable search.

At the combined hearing on the suppression motion and the supplemental petition, the juvenile court referee took judicial notice that the minor had been adjudged a ward eight months earlier and was subject to a general search clause as a condition of his probation.[1] The court determined that "the search absent the search clause is unconstitutional." However, since the minor had given up his Fourth Amendment right "the community is entitled to the benefit of the fact that the minor had waived his right" and it would serve "an insufficiently useful purpose to deny the People the right to use the evidence." Therefore it denied the suppression motion, sustained the petition and ultimately committed the minor to the custody of the probation department for placement in a court-approved home or institution.

---

[1] Specifically, the clause read as follows: "Submit person, any vehicle under minor's control, & residence to search & seizure by a peace officer at any time of the day or night with/without a warrant."

We note that appellant's initial disposition on April 21, 1989, was a commitment to the county's boys' ranch; he was released from that program on August 22, 1989, on probation.

On appeal we conclude that the search condition left the minor with no expectation of privacy which he could assert in claiming a violation of his Fourth Amendment rights even when the arresting officer was unaware of his probationary status. Therefore, we affirm the judgment.

## I. FACTS

Around noon on November 17, 1989, Richmond Police Officer Avon Dobie was in the vicinity of 420 20th Street, an area known for drug dealing and where loitering and shootings were common. He had worked that beat for the past year and had retrieved drugs from that address. Dobie described the house at 420 20th Street as "a house where crack cocaine is sold."

On that afternoon he spotted the minor and two other people, who appeared to be adults, sitting in front of the residence. The minor looked "very young" to Dobie to not be in school. He asked the minor why he was not in school. The minor told him he was between transfers. Dobie asked the minor his name and decided to investigate why he was not in school. But first he decided to conduct a patsearch "for safety reasons." The minor himself did nothing threatening, and Dobie did not have reason to believe he was armed or dangerous, but Dobie patsearched the minor anyway "for my safety, as I do every time I go into the area and contact someone." (Officer Dobie was unaware that the minor was on probation which was conditioned with a search clause.)

During the patsearch Dobie saw a lump in the minor's pants pocket, felt it and concluded the lump was consistent with the feeling of rock cocaine. Dobie then removed from the minor's pocket the bagged rock which was subsequently determined to be 1.68 grams of cocaine base.

## II. DISCUSSION

■ ■ ■ ■ Everyone, including this court, agrees there were no articulable facts justifying the patsearch.[2] ■ Our question is whether

---

[2] First, although Officer Dobie initiated contact with appellant to find out why he was not in school, a truancy detention is limited to the purpose of the stop and may not be used as a pretext for investigating criminal matters. (*In re James D.* (1987) 43 Cal.3d 903, 915 [239 Cal.Rptr. 663, 741 P.2d 161].) That Dobie had a legitimate reason to question appellant does not, and did not, mean he had a legitimate reason to frisk him. Second, we cannot justify the search as a self-protective stop and frisk because Dobie had no belief, reasonable or otherwise, that appellant was armed or dangerous. (*Terry* v. *Ohio* (1968) 392 U.S. 1, 32 [20 L.Ed.2d 889, 912, 88 S.Ct. 1868].) Finally, while the neighborhood profile, including its bustling drug activity, could be relevant when combined with additional factors (see *People* v. *King* (1989) 216 Cal.App.3d 1237, 1241 [265 Cal.Rptr. 370]), we know of no authority

the probationary search clause renders the minor without standing to object to Officer Dobie's objectively unreasonable frisk.

The minor approaches this case from the vantage point of the officer's conduct and state of mind; he presses for reversal on the theory that the search clause does not validate the search since Officer Dobie was neither pursuing a valid probationary purpose nor was he aware of the minor's probationary status. Focussing solely on the minor's status, the People counter that the minor had no grounds to challenge the search because he waived Fourth Amendment protection in exchange for the benefits of probation. We hold that because of the terms of his probation the minor had no expectation of privacy to assert in objecting to this search.

## A. *Fourth Amendment Rights May Be Circumscribed for Probationers*

The United States Supreme Court recently upheld a warrantless search of a probationer's home carried out pursuant to state administrative regulations which themselves satisfied the Fourth Amendment's reasonableness requirement. (*Griffin* v. *Wisconsin* (1987) 483 U.S. 868, 873 [97 L.Ed.2d 709, 717, 107 S.Ct. 3164].) Under the Wisconsin scheme probationers are subject to departmental conditions and regulations; one such regulation authorizes warrantless searches of a probationer's home if there are "reasonable grounds" to believe contraband is present. The rules spell out a slate of factors which the officer should consider in deciding if reasonable grounds exist, and further provide that it is a violation of the terms of probation to refuse to consent to a home search. (*Id.*, at pp. 870-871 [97 L.Ed.2d at pp. 715-716].)

The court explained that a probationer's home, like ours, is protected by the Fourth Amendment imperative that searches be reasonable. (*Griffin* v. *Wisconsin, supra*, 483 U.S. at p. 873 [97 L.Ed.2d at p. 717].) However, the operation of a state probation system gives rise to special needs beyond normal law enforcement demands that may permit dispensing with the warrant and probable cause requirements. (*Id.*, at pp. 873-874 [97 L.Ed.2d at pp. 717-718].) Liberties are restricted "to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. [Citation.] These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed. . . . Supervision, then, is a 'special need' of the State, permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large. . . ." (*Id.*, at p. 875 [97 L.Ed.2d at p. 718].)

validating a search on this factor alone, absent anything peculiar to the defendant to prompt the officer's suspicion.

*Griffin* permits warrantless probation searches undertaken pursuant to valid state law responding to the special supervisory and other needs of its probation system. The authority to search in that case existed by way of regulation, not because the defendant specifically agreed to submit to warrantless, unexpected searches.

Shortly after *Griffin* was decided our Supreme Court examined the validity of a search conducted pursuant to a search condition substantively identical to that in the case at bar. (*People* v. *Bravo* (1987) 43 Cal.3d 600, 608-609 [238 Cal.Rptr. 282, 738 P.2d 336].) The court in *Bravo* held there was no requirement of a "reasonable suspicion" for a probation search undertaken pursuant to such a clause, reasoning that where there is a valid consent, the resulting search does not violate the Fourth Amendment unless it exceeds the scope of the consent. (*Id.*, at p. 605.) "Consequently, 'when defendant in order to obtain probation specifically agreed to permit at any time a warrantless search of his person, car and house, he voluntarily waived whatever claim of privacy he might otherwise have had.'" (*People* v. *Bravo, supra,* 43 Cal.3d at p. 607, quoting *People* v. *Mason* (1971) 5 Cal.3d 759, 766 [97 Cal.Rptr. 302, 488 P.2d 630].) This broad interpretation of the scope of the probationer's consent in turn facilitates the dual purposes of the search clause, namely, to deter further offenses and discover whether the probationer is obeying the terms of probation. (43 Cal.3d at p. 610.)

■ However, we note that such a waiver by a probationer is not absolute: "We do not suggest that searches of probationers may be conducted for reasons unrelated to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes. A waiver of Fourth Amendment rights as a condition of probation does not permit searches undertaken for harassment or searches for arbitrary or capricious reasons." (43 Cal.3d at p. 610.) ■ There is no claim that Officer Dobie's search here was undertaken for harassment, arbitrary or capricious reasons. The evidence is uncontradicted that the frisk was but a minimal intrusion of the minor's privacy and was pursued for what Officer Dobie perceived as necessary for his personal safety. While the search did not satisfy the objective standard of reasonableness, it cannot be classified as harassment.

■ Viewing *Bravo* through *Griffin* eyes, the standard California probation clause is a valid state practice calculated to respond to the special needs of our probation system by enabling probation officers and others to monitor the probationer's progress and compliance with the terms of probation. It goes without saying that a search undertaken *pursuant to* that clause for monitoring or other probationary purposes would pass review under *Griffin* and *Bravo.* ■ However, this search was not conducted *pursuant to* the authority granted by the probationary search clause. We are, thus, faced

with the dilemma of two conflicting social policies—the need to enforce conditions to make probation effective for the community and meaningful for the probationer versus the need to insure that peace officers are not "rewarded" for unconstitutional behavior. While we do not condone unreasonable police conduct, and we do not hold that the probationer is without standing to object to indiscriminate police harassment, under the circumstances here present we do not ignore the probation violation because the constable was unaware of his actual authority and has not followed the letter of the law.

Contrary to the minor's assertion, we do not think the validity of his search condition is dependent upon the searching officer's knowledge of that condition. Admittedly, both *Griffin* and *Bravo* involved officers who knew of the probationary status of the subject of their search. Nevertheless, we are unaware of any relevant authority which invalidates the search of a probationer who is duty bound to subject himself or herself to search upon request by a peace officer, because that peace officer did not know the subject was on probation and subject to a search condition.

### B. *Constitutional Rights of Probationers Cannot Be Equated With Those of Parolees*

The minor, amicus curiae[3] and our dissenting colleague argue strongly that our analysis must be governed by those cases involving parole search conditions; those cases, they contend, lead to the inescapable conclusion that this search must be invalidated. They correctly conclude that the law will not justify an otherwise unreasonable search when the subject of the search is subsequently determined to be on parole. (*In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734]; *People* v. *Gastelum* (1965) 237 Cal.App.2d 205 [46 Cal.Rptr. 743]; *People* v. *Gallegos* (1964) 62 Cal.2d 176 [41 Cal.Rptr. 590, 397 P.2d 174].) But as even they recognize, there are important distinctions between probation and parole searches.

Certainly one major distinction is that the probationer has consented to waive his Fourth Amendment rights, while a parolee has not; a defendant may refuse probation, while a parolee must accept parole. (*People* v. *Bravo, supra,* 43 Cal.3d at p. 608.) In rejecting a rule that a probationer's waiver of Fourth Amendment rights validates only searches which meet the reasonable-suspicion standard, our California Supreme Court clearly recognized this probation/parole distinction: "The reasonable-suspicion standard adopted in [*People* v.] *Burgener* [1986] 41 Cal.3d 505 [224 Cal.Rptr. 112,

---

[3] The Los Angeles County Public Defender's Office was granted leave to file an amicus curiae brief.

714 P.2d 1251], for parole searches, therefore, has no application to searches conducted pursuant to a consensual probation order." (43 Cal.3d at p. 609.) The issue, as framed in *Bravo*, is the scope of the probationer's consent. *Bravo* teaches us that the probationer retains a limited Fourth Amendment right to complain about searches which have nothing to do with the "rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes." (*Id.* at p. 610.) We cannot say that Officer Dobie's lack of knowledge concerning the minor's probationary status rendered his patsearch without any rehabilitative or reformative effect; without question the frisk advanced a legitimate law enforcement purpose. Officer Dobie explained he wanted to pursue the school attendance matter with the minor but first decided to patsearch him, that being his standard practice when he contacted anyone in that particular location. There was no harassment or other improper motive on Officer Dobie's part. Finally, although the search was not occasioned by any suspicious or threatening conduct by the minor, we conclude a protective frisk in the course of questioning a minor about school attendance when encountered near a suspected crack house falls within the "other legitimate law enforcement purposes" language of *Bravo*.

 Other significant differences justify disparate treatment for probationers and parolees. Probation is an act of judicial grace or clemency, while the grant of parole is a mandatory act trusted to an administrative agency—in California, to the Board of Prison Terms. A parolee is said to have earned his release from prison by proving through good prison conduct his suitability for rehabilitation. As succinctly stated in *State* v. *Young* (1966) 237 Minn. 240 [141 N.W.2d 15, 19]: "While probation may be considered a mild form of ambulatory punishment imposing meaningful restraints, its true nature is an act of judicial grace. The [L]egislature has granted to the judiciary discretionary power to grant probation as a means of testing a convicted defendant's integrity and future good behavior. Unlike parole, granted by an administrative agency, *probation* is granted by the court when the sentencing judge deems the protection of society does not demand immediate incarceration. It *is not granted because of any merit or worthiness of the wrongdoer. Parole is the result of an investment of discipline in a prisoner who has earned the rewards of a milder form of punishment*. The parolee has demonstrated an empirical need for a new form of punishment more effectively suited to prepare him for society and to his rehabilitation." (Italics added; accord, *United States* v. *Shead* (10th Cir. 1978) 568 F.2d 678, 683; *State* v. *Loveland* (1976) 307 Minn. 519 [240 N.W.2d 326, 327, 328]; *Mills* v. *State* (Iowa 1981) 308 N.W.2d 65, 67.)

Considering such distinct underlying principles between probation and parole, it is no wonder that in upholding an unreasonable search conducted

pursuant to a search condition of a probationer, our Supreme Court expressly overruled those Court of Appeal cases which, in reliance upon parole cases, had held otherwise. (See *People* v. *Guerrero* (1978) 85 Cal.App.3d 572 [149 Cal.Rptr. 555]; *People* v. *Bremmer* (1973) 30 Cal.App.3d 1058 [106 Cal.Rptr. 797].) Thus, reliance on parole cases in determining the validity of probation conditions was condemned by our highest court as "blurring what has traditionally been a distinction between probation and parole searches." (*People* v. *Bravo, supra*, 43 Cal.3d at pp. 607-608.) In parole cases our Supreme Court has found it necessary "to balance the parolee's privacy interest with the societal interest in public safety [citations]." (*Id.* at p. 608.) But in probation cases "No such balancing is necessary . . . ." (*Ibid.*)

In determining whether to impose on the probationary search condition the requirement that the searching officer have knowledge of its existence, we but follow the lead of our highest court, which has refused to impose the requirement of "reasonable cause" upon that condition. Conditioning warrantless probation searches upon the officer's knowledge renders the probation order just as superfluous and vitiates its purpose just as much as conditioning those searches upon reasonable cause, which our Supreme Court found unwarranted. Since the search herein was of a probationer, we find it unnecessary to balance the probationer's privacy interest with society's interest in public safety. We will not thus blur the distinction between probation and parole.

■ Furthermore, it has long been held that in determining suppression motions, courts generally examine "the challenged searches under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved." (*Scott* v. *United States* (1977) 436 U.S. 128, 138 [56 L.Ed.2d 168, 178, 98 S.Ct. 1717] [a case affirming admission of wiretap evidence under the Omnibus Crime Control and Safe Streets Act of 1968 despite law enforcement agent's failure to make good faith efforts to minimize interception of nonnarcotics related calls].) *Scott* relied in part on *United States* v. *Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467], in which a suspect being searched incident to arrest complained that the officers' motivation in searching did not coincide with the legal justification for the search incident-to-arrest exception; the argument was rejected. "Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the officer] did not indicate any subjective fear of the respondent or that he did not himself suspect that respondent was armed." (*Id.* at p. 236 [38 L.Ed.2d at p. 441].) ■ This basic principle compels the conclusion that since the search herein, when viewed in light of the probation condition, was objectively reasonable, the

officer's knowledge of the search condition, like motivation, is irrelevant in determining its lawfulness.

C. *Minors on Probation Are Entitled to No Greater Immunity for Criminal Acts Than They Would Be Entitled to If on Adult Probation*

Finally, the minor and amicus curiae urge that there is a significant difference between adult and juvenile probation: an adult may refuse probation and choose to be sentenced to prison, while a juvenile may not. Thus, they argue, the juvenile probationer is more like the parolee; he has no choice; he did not voluntarily waive his Fourth Amendment rights: "[u]nlike adult probation, juvenile probation is not a grant of leniency imposed as an alternative to the legally authorized sentence. An adult may reject the sentencing court's offer of leniency and refuse probation; juveniles may not." (*In re Nathaniel Z.* (1986) 187 Cal.App.3d 1132, 1140 [232 Cal.Rptr. 378].) The argument advanced by appellant and amicus does not persuade us.

First, it is not altogether clear that such is the law of California. The quoted language appears as a final thought (without further analysis) to buttress an opinion which rejected the county's attempt to charge the parents for costs incurred in monitoring their son's probation—costs which the court correctly found to be the responsibility of society at large. The court concluded that since parents could not be charged for incarceration costs of adult children, "Likewise there is no basis for charging parents of juvenile offenders." (*In re Nathaniel Z.*, *supra*, 187 Cal.App.3d at p. 1140.) Appellant and amicus curiae also rely heavily on *In re Wayne J.* (1979) 97 Cal.App.3d 776 [159 Cal.Rptr. 106], for the proposition that like ". . . adults on parole, a juvenile ordered on probation may not refuse probation." We find appellant's reliance unjustified. The minor in *In re Wayne J.* argued only that imposition of probation for misdemeanor marijuana possession denied him equal protection because its terms were more onerous than the punishment prescribed for adult offenders, i.e., a $100 fine. The court characterized his objection to the disposition as a refusal of probation; relying on *In re Aline D.* (1975) 14 Cal.3d 557 [121 Cal Rptr. 816, 536 P.2d 65], it found probation to be a "preferred disposition" which was not an act of leniency which the minor could refuse. The foundations of *Aline D.* were seriously eroded by subsequent legislative amendments to the Juvenile Court Law (see *In re Michael D.* (1987) 188 Cal.App.3d 1392, 1396 [234 Cal.Rptr. 103]; *In re Tyrone O.* (1989) 209 Cal.App.3d 145, 151 [257 Cal.Rptr. 134]). Two years after *Aline D.* our Legislature changed the course of juvenile court law by tempering its previous preoccupation with rehabilitation with a new purpose: "To protect the public from criminal conduct by minors." Seven years after *Aline D.* the Legislature further

expanded on this new theme by requiring that public agencies take "the protection of the public" into consideration in administering the juvenile court law. (See Welf. & Inst. Code, § 202, subd. (d).) Thus, whether a minor may refuse probation in California today is still open to some question.

Indeed, there is considerable case authority outside California which holds that the juvenile *can* refuse probation. Thus, in *In the Matter of Anthony J.* (1976) 87 Misc.2d 34 [383 N.Y.S.2d 851] the juvenile refused to accept probation by arguing that since probation is a privilege, it cannot be imposed upon him against his will. The reviewing court agreed and held that since probation is a voluntary agreement, offered by a court in its discretion as a privilege, it can be refused. In its reasoning the court stated as follows: "In the criminal realm it is considered an alternative to imprisonment, and is offered to those who, in the court's estimation, need not be confined. Generally it is a written agreement in which the defendant promises to conform to a certain standard of behavior in consideration for his release. The defendant understands that a violation of the terms may lead to a revocation of probation and the imposition of any sentence that could have been imposed at the time of conviction. [Citations.] The decision as to who will be offered a sentence of probation rests entirely with the court. It is a privilege accorded in the exercise of its broad discretionary powers. It is not a right." (383 N.Y.S.2d at p. 853; see also *People* v. *Oskroba* (1953) 305 N.Y. 696 [112 N.E.2d 778].)

But whether a minor may or may not refuse probation is not the determinative factor here. What is critical is that the juvenile probationer has been admitted to probation upon a legitimate search condition (see *People* v. *Bravo, supra*, 43 Cal.3d 600) and has absolutely no reasonable expectation to be free from the type of search here conducted: "a probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of Fourth Amendment protection." (*People* v. *Mason, supra*, 5 Cal.3d at p. 765; *People* v. *Bravo, supra*, 43 Cal.3d at p. 607.) The lack of such expectation applies to adult and juvenile alike. ■ It is, of course, axiomatic that the capacity or standing to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place or item, but rather on whether the person who claims the constitutional protection has a legitimate expectation of privacy in the item seized. (*Rakas* v. *Illinois* (1978) 439 U.S. 128, 143 [58 L.Ed.2d 387, 400-401, 99 S.Ct. 421].) ■ Appellant's expectation of privacy cannot reasonably be said to extend to searches conducted by officers who are ignorant of his probationary status. He was placed on probation subject to being searched by a peace officer without a warrant; he was frisked by a peace officer without a warrant; his condition was not that he was subject to search by a peace officer who knew of the search

condition; hence the peace officer's lack of knowledge extended appellant's expectation of privacy not one whit. Appellant's release on probation with a search condition was tantamount to taking away his legitimate expectation of privacy in the contraband seized; this, in turn, resulted in a loss of standing to invoke his Fourth Amendment right. ■ Needless to say, the constitutional principle of standing does not depend on the age of a criminal defendant; it has applicability to all claimants regardless of whether they are tried as adults or juveniles.

We conclude that our holding that the minor may not object to this frisk even though the peace officer was unaware that he was duty bound by the terms of his probation to submit is consistent with and in furtherance of the purposes of the juvenile jourt law: "Juvenile courts and other public agencies charged with enforcing, interpreting, and administering the juvenile court law shall consider the safety and protection of the public and the best interests of the minor in all deliberations pursuant to this chapter." (Welf. & Inst. Code, § 202, subd. (d).) To suppress this evidence would not be in the best interests of the minor.

The judgment is affirmed.

Perley, J., concurred.

**REARDON, J.**—I respectfully dissent from the conclusion reached by my learned colleagues in the majority. Today, we dispense with a requirement under existing law relating to the search of a probationer by police. The requirement eliminated is knowledge by the searching officer that the person searched is a probationer with a search condition. This holding takes us beyond *Bravo* (*People* v. *Bravo* (1987) 43 Cal.3d 600 [238 Cal.Rptr. 282, 738 P.2d 336]), and represents an extension that is not only unsupported by, but is inconsistent with, *Bravo* and *Griffin* v. *Wisconsin* (1987) 483 U.S. 868 [97 L.Ed.2d 709, 107 S.Ct. 3164], relied on by the majority.

In *Bravo, supra*, our Supreme Court held that a search of the home of a probationer with a search condition, by police officers with knowledge of that search condition (43 Cal.3d at p. 603), was permissible in the absence of reasonable or probable cause. In so holding, the court reasoned that a probationer's search condition was equivalent to a consent to search. Therefore, if the searching officer was aware of the search condition or consent, nothing more by way of justification is required. "Our interpretation of the scope of appellant's consent in agreeing to the search condition of his probation is consistent with the dual purpose of such a provision 'to deter further offenses by the probationer and to ascertain whether he is complying with the terms of his probation'." (*Id.*, at p. 610, citing *People* v. *Mason*

(1971) 5 Cal.3d 759, 763 [97 Cal.Rptr. 302, 488 P.2d 630].) The *Bravo* court, nonetheless, observed: "We do not suggest that searches of probationers may be conducted for reasons unrelated to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes." (*Ibid.*) This language, in my opinion, compels the conclusion that the searching officer must, at a minimum, know that the person to be searched is a probationer with a search condition.

Clearly, in order to have the requisite reason related to the "rehabilitative and reformative purposes of probation," the searching officer must have knowledge that the defendant is indeed on probation. In the absence of such knowledge, the objective of the search is simply unrelated to any proper probationary purpose. Secondly, the language "other legitimate law enforcement purpose" must be construed in this same context. In short, this terminology can only refer to observations of activity not amounting to reasonable or probable cause to search but which activity is inconsistent with defendant's status as a probationer, a status that requires the probationer to refrain from violations of the law. In either or both situations, knowledge of the defendant's probationary status is essential.

Additionally, the very rationale of *Bravo*, that a probationary search condition is equivalent to consent, compels the conclusion that the search condition must be known to the searching officer. It seems well settled that where a search is sought to be justified on the basis of consent, the consent must be known or apparent to the searching officer before the search is conducted. (See, for example, *People v. Poole* (1986) 182 Cal.App.3d 1004, 1013 [227 Cal.Rptr. 594]; *People v. Haven* (1963) 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927].) Without knowledge of consent, there can be no consensual search. This well-established rule is not changed or altered because the consent is embodied in a search condition rather than expressed at the time of the actual search.

"[A]ppellant's waiver of his Fourth Amendment rights must be interpreted on the basis of an objective test. Law enforcement officers who rely on search conditions in probation orders, the probationer himself, and other judges who may be called upon to determine the lawfulness of a search, must be able to determine the scope of the condition by reference to the probation order. We cannot expect police officers and probation agents who undertake searches pursuant to a search condition of a probation agreement to do more than give the condition the meaning that would appear to a reasonable, objective reader. . . . The search condition must therefore be interpreted on the basis of what a reasonable person would understand from the language of the condition itself . . . . " (*People v. Bravo, supra,* 43 Cal.3d at pp. 606-607, fn. omitted.)

If knowledge of the search condition by the searching officer is no longer relevant, as the majority holds, why would the court in *Bravo* find it necessary to discuss the "objective" reasonableness of the officer's interpretation of the search condition? For that matter, how is a search condition "interpreted" by the officer if he or she is unaware of the condition? The answer seems clear: to justify a search on the basis of a search condition, the condition must be known by the person conducting the search. *Bravo*, therefore, not only fails to support the rule announced by the majority, but in fact by its rationale dictates a contrary result.

The majority's reliance on *Griffin* v. *Wisconsin, supra*, is misplaced. In *Griffin*, like *Bravo*, the person conducting the search *knew* that the person to be searched was a probationer. In upholding a warrantless search of a probationer's home by a probation officer, the Supreme Court approved a regulation adopted under Wisconsin law that was described by the court as follows: "One of the Department's regulations permits any probation officer to search a probationer's home without a warrant as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband—including any item that the probationer cannot possess under the probation conditions." (*Griffin* v. *Wisconsin, supra*, 483 U.S. at pp. 870-871 [97 L.Ed.2d at p. 715].) *Griffin*, therefore, upholds a state's regulation authorizing a probation officer to conduct a warrantless search of the home of the probationer that he is supervising when there are "reasonable grounds" to believe that contraband is present. The decision does not support the proposition that a police officer may conduct an unreasonable search of an individual and have that search subsequently validated if the individual happens to be a probationer with a search condition, a fact unknown to the officer at the time of the search. In fact, the courts of this state have repeatedly rejected this subsequent validation theory.

In *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734], a case involving a parolee with a search condition unknown to the searching officer, the court stated: "The investigation involved suspected criminal activity, not parole violations. Under these circumstances the officers cannot undertake a search without probable cause and then later seek to justify their actions by relying on the defendant's parole status, a status of which they were unaware at the time of their search." (*Id.*, at p. 646.) In *People* v. *Gastelum* (1965) 237 Cal.App.2d 205, 207 [46 Cal.Rptr. 743], involving a similar parolee search, the court observed: "It is also true that when law enforcement officers are unaware of a defendant's parolee status the fact of parole is irrelevant and cannot justify an otherwise unlawful search." (See also *People* v. *Gallegos* (1964) 62 Cal.2d 176, 178 [41 Cal.Rptr. 590, 397 P.2d 174].) Although the above cited authorities involved parolees and not probationers, and although there are recognized distinctions "between

probation and parole searches" (*People* v. *Bravo, supra*, 43 Cal.3d at p. 608), no distinction has ever been drawn to eliminate the requirement of knowledge that the person searched is either a parolee or a probationer. No such distinction, in my opinion, should be drawn. To dispense with the parole search requirement of "reasonable suspicion" in searching probationers (*id.,* at p. 609) is one thing; to eliminate the requirement of knowledge of the search condition is an entirely different proposition.[1]

Finally, it is argued that the search condition eliminates any reasonable expectation of privacy on the part of the probationer and, therefore, the probationer should not be heard to complain when searched by an officer who lacks knowledge of the search condition. In support of this position, the observation is made that the search condition does not expressly provide that the officer have knowledge of the search condition.

With respect to this latter observation, the absence of such an express provision in the search condition as somehow limiting the probationer's expectation of privacy is unpersuasive. The current search condition does not contain an express provision that the police comply with the "knock-notice" requirements of Penal Code section 844, yet that protection or expectation is clearly recognized. (See *People* v. *Negrete* (1978) 82 Cal.App.3d 328, 336 [147 Cal.Rptr. 101].) Similarly, the current search condition does not contain an express provision informing the probationer that he or she may not be searched for purposes of "harassment or . . . for arbitrary or capricious reasons." (*People* v. *Bravo, supra*, 43 Cal.3d at p. 610.) Nonetheless, the probationer is protected from this type of activity. The absence of an express provision in the search condition that the officer have knowledge of the condition before searching the probationer is not controlling. What is controlling is "what a reasonable person would understand from the language of the condition itself . . . ." (*Id.,* at p. 607.)

A reasonable person would understand the search condition to mean that he or she consents to be searched without a warrant and without reasonable or probable cause. This same reasonable person would also understand that if such a search is to be conducted, it will be conducted *pursuant* to the

---

[1] It must be observed that the appellant in this case is a juvenile probationer. He, unlike the adult probationer in *Bravo*, did not voluntarily accept the search condition. The condition was simply imposed as an element of a probation grant that he had no right or opportunity to refuse. (See *In re Nathaniel Z.* (1986) 187 Cal.App.3d 1132, 1140 [232 Cal.Rptr. 378]; *In re Wayne J.* (1979) 97 Cal.App.3d 776, 780 [159 Cal.Rptr. 106].) His status, then, with respect to the search condition, is not the same as an adult probationer, who may reject probation, but rather that of a parolee, upon whom parole is imposed. Accordingly, even if the majority's distinction between probationer and parolee were accepted for purposes of dispensing with the knowledge requirement, that very distinction would compel suppression of the evidence here under the rule of *Martinez* rather than serve as a justification for the search.

search condition that defines the scope of his or her consent. (See *People* v. *Bravo, supra*, 43 Cal.3d at pp. 606-607.) This search was not conducted pursuant to the search condition because the officer did not know of the condition. The probationer reasonably retains this minimal expectation of privacy, an expectation that the searching officer will have knowledge of the consent, and the scope thereof, as embodied in the search condition. Since such an expectation or understanding was reasonable, appellant clearly has standing to complain.

Since Officer Dobie did not know that appellant was subject to a search condition, and there being no justification for the patsearch of appellant, the trial court erred in admitting the seized contraband. The judgment, therefore, should be reversed.[2]

Appellant's petition for review by the Supreme Court was denied June 11, 1991.

---

[2] It is important to note that the proceedings on the supplemental petition in this case are not akin to probation revocation proceedings, where admissibility of illegally seized evidence is analyzed under a less stringent standard. (See *People* v. *Harrison* (1988) 199 Cal.App.3d 803, 808-812 [245 Cal.Rptr. 204].) Here, like an adult defendant facing new criminal charges, appellant was entitled to the full "panopoly of constitutional protections" (*In re Michael V.* (1986) 178 Cal.App.3d 159, 167 [223 Cal.Rptr. 503]), including invocation of the exclusionary rule where evidence has been obtained as the result of an unreasonable search.