Filed 10/4/19; Certified for Publication 10/21/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B293920 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA066713) |
| v. | |
| CARISSA KINGSTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Shannon Knight, Judge.  Affirmed.

Carolyn D. Phillips, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Carissa N. Kingston appeals from an order revoking her probation, contending the order constituted an abuse of discretion. She also contends the trial court erred in failing affirmatively to determine whether she had an ability to pay ordered fines and restitution. We reject both contentions, and affirm.

## BACKGROUND

On November 19, 2015, Kingston pleaded no contest to one count of receiving a stolen car. (Pen. Code, § 496d, subd. (a).)[1]

The trial court suspended imposition of sentence and placed Kingston on formal probation for three years, conditioned on her reporting to probation within four days and completing 45 days of community labor, 30 of them within 18 months, i.e., by June 2017.

The court ordered Kingston to pay a $300 restitution fine (§ 1202.4, subd. (b)), a $300 probation revocation fine (§ 1202.44, effective upon revocation of parole), a $30 criminal conviction assessment (Gov. Code, § 70373), a $40 court operations assessment (§ 1465.8, subd. (a)(1)), a $10 crime prevention fine (§ 1202.5), court costs of $29, and a $2 criminal fine surcharge, for a total (not including the probation revocation fine) of $411.

Kingston failed to report as ordered. The court preliminarily found she had violated the terms of her probation, and issued a bench warrant for her arrest. On January 4, 2016, Kingston appeared in court and admitted she had violated probation by failing to report. The court revoked and then reinstated her probation and ordered her to report to probation in person in the courthouse by 4:00 p.m. that day.

_____

[1] All undesignated statutory y references will be to the Penal Code.

2

Eighteen months later, on July 3, 2018, Kingston's probation officer reported she had been assessed, in addition to the $411 originally ordered, a "collection installment fee" of $50, a "restitution fine service charge" of $30, an additional $44 appended to the crime prevention fine (see *People v. Castellanos* (2009) 175 Cal.App.4th 1524 [seven penalty assessments attach to the crime prevention fine]), and an assessment for the cost of probation services in the amount of $4,197, for a grand total of $4,691.

Kingston's probation officer also reported she had been on a payment plan of $25 per month, and had made 14 payments totaling $454, rendering her partially noncompliant with the pay plan. She had had no additional arrests but had also neither registered for nor performed any community service to date, in violation of the condition that she have at least 30 of her 45 days completed a year earlier, by July 2017. The probation officer recommended that Kingston be given a one-year extension during which to complete the community service, with all other terms and conditions of probation remaining intact.

On July 26, 2018, Kingston again appeared in court. She admitted violating probation and acceded to the court's intention to terminate probation and sentence her to the low term of 16 months in county jail. However, she requested that she be released on her own recognizance for one month, until August 30, 2018. The court granted the request but informed Kingston that should she not appear on August 30 a bench warrant would be issued for her arrest, and when she was next before the court she would be sentenced to the high term of three years. Kingston accepted these terms.

Kingston failed to appear, and the court issued a bench warrant.

On September 14, 2018, the court found Kingston in violation of probation. She requested through her attorney that should probation be reinstated—with the one-year extension recommended by the probation department—she promised to complete the 45 days of community service, representing that her boyfriend could be in court that day to pay the $150 registration fee. Kingston's attorney further represented that she had completed a six-month outpatient drug rehabilitation program, had no new criminal offenses, was attending Narcotics Anonymous meetings, and was in the midst of dependency proceedings to regain custody of her child. No evidence was offered to support these representations. In the alternative, Kingston requested that her sentence be served at home with electronic monitoring, or as a last resort that she be sentenced to only 16 months in jail.

The court found Kingston had violated probation twice. It stated it would have granted an extension had she requested one "within a reasonable period of time after the due date," but not after almost three years of disregard for her obligation to complete at least some of the community labor. The court further found Kingston forfeited the right to a 16-month sentence when she failed to appear for her sentencing.

The court terminated probation and sentenced Kingston to the high term of three years in county jail, with total custody credit of four days.

Kingston appealed on November 9, 2018. Attached to her notice of appeal is a request for a certificate of probable cause, in support of which she declares she "wasn't able to pay the

4

[community service registration] fee[ of $150] before," but now could do so.

## DISCUSSION

### A. The Court Did Not Abuse Its Discretion in Terminating Probation

Kingston contends the court abused its discretion in refusing to reinstitute probation. We disagree.

"Probation is an act of judicial grace or clemency . . . . 'While probation may be considered a mild form of ambulatory punishment imposing meaningful restraints, its true nature is an act of judicial grace. The [L]egislature has granted to the judiciary discretionary power to grant probation as a means of testing a convicted defendant's integrity and future good behavior. . . . [P]*robation* is granted by the court when the sentencing judge deems the protection of society does not demand immediate incarceration. It *is not granted because of any merit or worthiness of the wrongdoer.*' " (*In re Marcellus L.* (1991) 229 Cal.App.3d 134, 142.)

" 'A denial or a grant of probation generally rests within the broad discretion of the trial court and will not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary or capricious manner.' [Citation.] A court abuses its discretion 'whenever the court exceeds the bounds of reason, all of the circumstances being considered.' [Citation.] We will not interfere with the trial court's exercise of discretion 'when it has considered all facts bearing on the offense and the defendant to be sentenced.' " (*People v. Downey* (2000) 82 Cal.App.4th 899, 909-910.) " '[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter

5

of denying or revoking probation. . . .' " (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443.)

Here, Kingston violated the conditions of her probation by failing to report in the first instance.  The court terminated probation, admonished her, and immediately reinstated it, giving her 18 months in which to complete 30 out of the 45 days of community service upon which probation was conditioned.  During the next *30* months Kingston made no effort even to register for the community service, much less complete it.

Kingston thereafter failed to appear for sentencing after persuading the court to release her on her own recognizance.  And she made no effort to notify anyone ahead of time of her various failures and absences, or to explain them afterward.  Although Kingston's attorney represented that she had completed a drug rehabilitation program and was attending Narcotics Anonymous, no evidence supported these claims.

When the record reveals that a defendant's violation of the terms of probation was the result of irresponsible or willful behavior, termination of probation and imposition of a prison sentence is no abuse of discretion.  (Cf. *People v. Zaring* (1992) 8 Cal.App.4th 362, 379.)

Kingston argues her failure to register for or complete any community service was caused by her inability to pay the $150 registration fee.  No evidence supports the argument, which is belied by her having made at least 14 payments of $25 during the course of her probation.  Kingston's declaration in her notice of appeal, filed three weeks after the sentencing hearing, that she could not pay the fees "before" but could now, came too late, and furthermore refuted rather than supported the argument because it demonstrated her ability to obtain the registration fee in a

matter of weeks once motivated to do so.  Kingston fails to explain why she could not have shown similar industry during the 30 months from January 2016 to July 2018.

## B.    Court-Imposed Assessments and Fines Did Not Violate Due Process

The trial court imposed several fines and fees without a hearing to determine Kingston's ability to pay them.  She argues imposition of the fines and fees was unconstitutional absent such a hearing pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1168 (*Dueñas*).  We disagree.

The defendant in *Dueñas* had cerebral palsy, was homeless and unemployed, and had two children.  She began accruing various fines as a teenager for driving without a license, which she never could pay.  Upon her fourth misdemeanor conviction Ms. Dueñas was placed on probation, and at her request the court held a hearing on her ability to pay a $150 restitution fine (the minimum amount required under § 1202.4, subd. (b)(1)), court operations and criminal conviction assessments (§ 1465.8; Gov. Code, § 70373), and attorney fees.  (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1161-1162.)  Because it was undisputed she lacked the ability to pay, the court waived the attorney fees but determined the assessments were statutorily required, and felt it was prohibited from considering her inability to pay the restitution fine.  (*Id*. at p. 1163.)

Our colleagues in Division Seven of this District reversed, holding that due process precludes a court from imposing court facilities and operations assessments, and requires the trial court to stay execution of any restitution fines, absent a finding that the defendant "has the present ability to pay" them.  (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.)  Very recently our colleagues

7

in Division Two disagreed with *Dueñas*, holding that due process precludes a court from imposing fines and assessments only if to do so would deny the defendant access to the courts or result in the defendant's incarceration. (*People v. Hicks* (Sept. 24, 2019, B291307) \_\_\_Cal.App.5th\_\_\_ [2019 Cal.App. Lexis 914, at pp. 15-16] (*Hicks*).) We find *Hicks* to be the better reasoned decision. (See *People v. Caceres* (2019) \_\_\_ Cal.App.5th \_\_\_ [declining to apply *Dueñas's* "broad holding" beyond its "unique facts"].)

"To reach its holding, *Dueñas* wove together two distinct strands of due process precedent. [¶] The first strand secures a due process-based right of access to the courts . . . . requir[ing] courts to waive court costs and fees that would otherwise preclude criminal and civil litigants from prosecuting or defending lawsuits or from having an appellate court review the propriety of any judgment. . . . [¶] The second strand erects a due process-based bar to incarceration based on the failure to pay criminal penalties when that failure is due to a criminal defendant's indigence rather than contumaciousness." (*Hicks*, *supra*, \_\_\_Cal.App.5th\_\_\_ [pp. 6-7].)

But "[t]he first strand does not dictate *Dueñas*'s bar on imposing fees because the imposition of assessments, fines and fees does not deny a criminal defendant access to the courts. [Citations.] The cases requiring the removal of financial bars to access are keyed to ensuring that the litigant has a full and fair opportunity to present the *merits* of his or her claims at trial and on appeal. [Citations.] In this regard, access is part and parcel of the 'opportunity to be heard' that the constitutional right of due process is meant to secure." (*Hicks*, *supra*, \_\_\_Cal.App.5th\_\_\_ [pp. 8-9].) *Dueñas's* second strand also does not dictate its "bar on imposing fees because their imposition, without more, does not

8

result in incarceration for nonpayment due to indigence." (*Id.* at p. 9.) "The cases prohibiting incarceration for indigence alone rest on the notion that *'[f]reedom from imprisonment* . . . lies at the heart of the liberty that [the Due Process] Clause protects.' [Citation.] The act of imposing an assessment, fine or fee upon a criminal defendant at the time of sentencing does not mandate instant incarceration and thus does not infringe that very fundamental liberty interest." (*Ibid.*)

On the contrary, "[o]ur Supreme Court in [*In re Antazo* (1970) 3 Cal.3d 100] expressly declined to 'hold that the imposition upon an indigent offender of a fine [or] penalty assessment, either as a sentence or as a condition of probation, constitutes of necessity in all instances a violation of the equal protection clause.' [Citation.] *Antazo* refused to prohibit the imposition of fines and assessments upon indigent defendants for good reason, which the United States Supreme Court explained best: 'The State . . . has a fundamental interest in appropriately punishing persons—rich and poor—who violate its criminal laws,' such that '[a] defendant's poverty in no way immunizes him from punishment.' [Citation.] To confer such an immunity, that Court has said, 'would amount to inverse discrimination [because] it would enable an indigent [defendant] to avoid both the fine and imprisonment for nonpayment whereas other defendants must always suffer one or the other . . .' [Citation.] By adopting an across-the-board prohibition on the very imposition of assessments and fines on indigent defendants, *Dueñas* prohibits a practice that *Antazo* sanctioned (albeit under a different constitutional provision). What is more, *Dueñas* mandates the very type of 'inverse discrimination' condemned by the Court . . . ." (*Hicks, supra,* ___Cal.App.5th___ [pp. 10-11].)

9

Further, "*Dueñas* is inconsistent with the purposes and operation of probation.  The chief purpose of probation is to ' "rehabilitat[e]" ' and 'reintegrat[e] . . . [a] [defendant] into the community.'  [Citations.]  One way to achieve this purpose is to require the defendant-probationer to make an effort to repay his debt to society.  This is why our Legislature has specifically empowered trial courts to 'require[,] as a condition of probation[,] that [a] probationer go to work and earn money' in order 'to pay any fine imposed or reparation condition.'  [Citation.]  And it is why the constitutional prohibition against incarcerating a defendant for the inability to pay criminal penalties due solely to his indigence does not prohibit 'revoking probation and using imprisonment as an appropriate penalty' when a probationer has 'fail[ed] to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution.'  [Citation.]  *Dueñas* impedes the purpose of probation because it prohibits the imposition of any assessment, fines or fees at the outset of the probationary period and thus relieves the indigent probationer of any duty to make any effort to repay his debts and thereby rehabilitate himself.  *Dueñas* is also inconsistent with the operation of probation, which typically lasts a number of years (§ 1203.1, subd. (a)) and thus gives probationers a significant period of time to repay their financial obligations—either due to their bona fide efforts or to other changes in their financial circumstances.  [Citations.]  By precluding the imposition of assessments, fines and fees at the outset (and thus absolving them of any duty to pay them), *Dueñas* deprives indigent probationers of any time to repay those obligations." (*Hicks*, *supra*, ___Cal.App.5th___ [pp. 11-13].)

10

In our case, imposition of the assessments and fees in no way interfered with Kingston's right to present a defense at trial or to challenge the trial court's rulings on appeal; they were imposed after Kingston pleaded no contest. And their imposition did not result in Kingston's incarceration. The court revoked Kingston's probation and imposed sentence because even after 18 months into her three-year probation, and fully one year beyond an interim deadline, she had failed to register for or perform any community service.

Kingston never contended below that she was unable to pay the $150 community service registration fee, and nothing in the record indicates she suffered from a physical, mental or emotional impediment that precluded her from " 'mak[ing] sufficient bona fide efforts to seek employment or borrow money in order to pay' " it. (*Hicks*, *supra*, ___Cal.App.5th___ [p. 12].) On the contrary, Kingston demonstrated her ability to pay the fee by representing below that her boyfriend could be in court that day to pay it, and by obtaining the $150 in the three weeks between the sentencing hearing and her notice of appeal.

In sum, the trial court did not violate Kingston's due process rights by imposing the assessments and restitution fine without first ascertaining her ability to pay them.

11

## DISPOSITION

The judgment is affirmed.


                                    CHANEY, J.


We concur:



        ROTHSCHILD, P. J.



        WEINGART, J.*

---

        * Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


12

Filed 10/21/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARISSA KINGSTON,<br><br>    Defendant and Appellant. | B293920<br><br>(Los Angeles County<br>Super. Ct. No. MA066713)<br><br>ORDER CERTIFYING<br>OPINION FOR<br>PUBLICATION |

THE COURT:

The opinion filed in the above-entitled matter on October 4, 2019, was not certified for publication in the Official Reports. Pursuant to California Rules of Court, rule 8.1105(c), this opinion is now ordered published in the Official Reports.

_____

ROTHSCHILD, P. J.          CHANEY, J.          WEINGART, J.*

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.