[No. H004095. Sixth Dist. Mar. 20, 1989.]

In re TYRONE O., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
TYRONE O., Defendant and Appellant.

## COUNSEL

James R. Stupar, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Gerald A. Engler and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ELIA, J.**—Tyrone O., a 17-year-old minor, appeals the order modifying his previous disposition by the juvenile court and committing him to the California Youth Authority (CYA) pursuant to Welfare & Institutions Code section 777.[1] He seeks reversal on the dual grounds that the district attorney denied him due process by failing to notify him it would recommend CYA commitment, and that the trial court abused its discretion by ordering such commitment. We find no reversible error and affirm.

FACTUAL BACKGROUND

Tyrone is the youngest of three children; his siblings have not prompted the attentions of juvenile authorities. Tyrone first became a ward of the court at age 12, pursuant to a 1984 proceeding under section 602[2] for threatening a classmate with sewing shears. (Pen. Code, § 417.) Following five days in juvenile hall, he successfully completed a one-year probation period which included personal and family counseling and public service work. In January 1987, another section 602 petition charged him with burglary of an inhabited residence during which he stole jewelry, cash, and wine (Pen. Code, §§ 459-460.1), and petty theft of a pair of shoes from a shoe store (Pen. Code, §§ 484-488), charges carrying a maximum combined term of six years and two months. Tyrone admitted the allegations and was committed to the Harold Holton Ranch for Boys for the five-month short term, including participation in an alcohol counseling program. He qualified for "pre-release" furlough in early July 1987, but was returned to the ranch several weeks later for violating curfew and being under the influence of alcohol. He was "pre-released" again in early August 1987.

Several weeks later, police arrested Tyrone for stealing and consuming two bottles of wine in a convenience store. This petty theft charge was settled at intake, pursuant to a compromise reflecting Tyrone's acceptance of the ranch's offer of immediate return with demotion in lieu of court action, and the district attorney's choice of the most expedient means of returning Tyrone to ranch custody. Little more than a week after his return

---

[1] All further statutory references are to the Welfare & Institutions Code unless otherwise noted.

[2] Section 602 provides: "Any person who is under the age of 18 years when he violates any law of this state . . . is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

to the ranch, Tyrone escaped with two other minors; his attempt the day before had failed.

The petty theft (Pen. Code, §§ 484-488) and the escape (Pen. Code, § 871) were alleged in a section 602 petition filed in September 1987. It requested aggregation of the terms of all prior petitions (§ 726), and recommended long-term commitment to a different ranch along with a suspended CYA commitment. Tyrone admitted the escape; the theft charge was dismissed. On October 5, 1987, the court ordered full-term commitment to the William F. James Boys Ranch for the increased maximum term of six years and six months. Immediately upon his October 13th arrival at the ranch, Tyrone refused to submit to intake procedures and repeatedly threatened to commit suicide or to run away if forced to stay. He fortified his suicide threat by tightening the drawstring at the neck of his sweatshirt until his breathing was constricted. Ranch management immediately determined that ranch commitment was a rehabilitative failure and returned Tyrone to juvenile hall.

On October 16, 1987, the probation officer filed the instant petition under section 777.[3] At the originally scheduled October 30th hearing, the court received the probation officer's report which asserted the ineffectiveness of prior placements but made no dispositional recommendation, and requested a two-week continuance to permit a psychological evaluation. After granting this and two additional continuances, the court heard the petition on November 30, 1987. That day, the probation officer and the probation counselor filed reports recommending CYA commitment. A probation department psychologist recommended commitment to juvenile hall for the remainder of his sentence. Tyrone requested a 90-day term in juvenile hall to be followed by home probation supported by private counseling at his mother's church. The court found that probation and the ranch programs were not workable alternatives, that juvenile hall detention would provide little more than detention, and that Tyrone would benefit from CYA's structured treatment and counseling. He was committed to CYA for the maximum term of six years and six months, with credit for time in custody.

## Issues Presented

Appellant urges two grounds for reversal. First, he contends that the district attorney's failure to include in the petition an express statement of

---

[3] Section 777 provides in relevant part: "An order changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private institution or commitment to a county institution, or an order changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after noticed hearing upon a supplemental petition."

intention to recommend CYA commitment denied appellant due process. Second, he contends that the evidence did not warrant CYA commitment.

DISCUSSION

I. *Appellant Received Due Notice*

At the time of the instant proceeding, prevailing law required notice to the minor of "the intended change in custody" when the petition sought a more restrictive level of custody. (*In re Michael B.* (1980) 28 Cal.3d 548, 552 [169 Cal.Rptr. 723, 620 P.2d 173]; *In re Ronald W.* (1985) 175 Cal.App.3d 199, 204 [220 Cal.Rptr. 557].) However, no case discussing this proposition has held that a petition must expressly state that a more restrictive placement is being sought and specify the placement. We, too, decline to do so.

 While we recognize that an explicit declaration of intention to seek more restrictive custody (see, e.g., *In re Ronald W., supra,* at p. 204, fn. 12) is sometimes necessary to avoid confusion over whether a change in the nature rather than merely the duration of custody is at issue, as where a petition charges new offenses and/or seeks aggregation of the terms of confinement (cf. *In re Ronald W., supra,* 175 Cal.App.3d at pp. 202-204; §§ 602 [new offense], 726 [aggregation], 778 [duration]), or where the face of the petition fails to specify the statutory provisions under which it proceeds (*In re Michael B., supra,* 28 Cal.3d at pp. 552-555; *In re Ruben A.* (1981) 121 Cal.App.3d 671, 673, fn. 1 [175 Cal.Rptr. 649]), we decline to find a potential for confusion in all cases.

 We do not find one here, where the petition consisted of the juvenile court's own preprinted form entitled, "Supplemental Petition-Section 777," which contained all the information required by the juvenile court rules (Cal. Rules of Court, rules 1392(a), 1309(a).) Because the petition expressly cited section 777 and alleged that the prior disposition to a county institution had been ineffective, appellant should have known that more restrictive custody was sought and that CYA was the only remaining alternative fitting that description. (Cal. Rules of Court, rule 1391(b)(1) [listing dispositional alternatives in ascending order of restriction]; *In re Martin L.* (1986) 187 Cal.App.3d 534, 542 [232 Cal.Rptr. 43]; *In re Joe A.* (1986) 183 Cal.App.3d 11, 21-22 [227 Cal.Rptr. 831].)

We conclude that the petition provided adequate notice that the People sought a more restrictive level of custody under section 777. Therefore, appellant is not entitled to reversal on that ground.

## II. *CYA Commitment Was Proper*

■ "The decision of the juvenile court may be reversed on appeal only upon a showing that the court abused its discretion in committing a minor to CYA. [Citations.] An appellate court will not lightly substitute its decision for that rendered by the juvenile court. We must indulge all reasonable inferences to support the decision . . . and will not disturb its findings when there is substantial evidence to support them. [Citations.]" (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395 [234 Cal.Rptr. 103].)

Appellant attacks the dispositional order on two grounds: First, that less restrictive dispositional alternatives were available; and second, that Tyrone had not exhibited misconduct of sufficient seriousness to merit CYA's custodial restrictions.

The first ground is without merit. ■ There is no absolute rule barring CYA commitment except as a last resort. (*In re Martin L., supra,* 187 Cal.App.3d at p. 544; *In re Samuel B.* (1986) 184 Cal.App.3d 1100, 1104 [229 Cal.Rptr. 378] overruled on another point in *People* v. *Hernandez* (1988) 46 Cal.3d 194 [249 Cal.Rptr. 850, 757 P.2d 1013].) Appellant relies primarily on *In re Aline D.* (1975) 14 Cal.3d 557, 564 [121 Cal.Rptr. 816, 536 P.2d 65]. That decision predates the 1984 amendment of section 202 (Stats. 1984, ch. 756, §§ 1, 2), in the wake of which it has become questionable authority on the point. (*In re Michael D., supra,* 188 Cal.App.3d at p. 1396.) Contrary to appellant's position, "[c]ircumstances in a particular case may well suggest the desirability of a [C]YA commitment despite the availability of . . . alternative dispositions . . . . [Citations.]" (*In re Martin L., supra,* 187 Cal.App.3d at p. 544; *In re Samuel B., supra,* 184 Cal.App.3d at p. 1104.)

The question of whether CYA commitment is "desirable" encompasses appellant's second ground of error. The starting point of our analysis is section 202, as amplified in section 734.[4] Those sections mandate ". . . care, treatment and guidance . . . which holds [the minor] accountable for [his] behavior, and which is appropriate for [his] circumstances," including "punishment that is consistent with . . . rehabilitative objectives" (§ 202, subd. (b)), and authorize CYA commitment where the judge is "fully satisfied" that the minor's condition and circumstances "render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority" (§ 734).

■ Appellant argues that CYA commitment here was inappropriate because it is intended only for "serious delinquents [guilty of] only . . . the

---

[4] Unlike section 202, section 734 has remained unchanged since its enactment in 1961.

most severe and serious matters requiring penal retribution for the minor [and] protection for society." In contrast, appellant describes himself as, "not a model individual, [but] . . . essentially nothing more than an unsophisticated delinquent youth who became a placement problem" and possessed a "history of offenses [which] were not the most serious of criminal activities." From this, appellant concludes that the trial court, the district attorney, the probation department, and the ranch must have improperly viewed the proper commitment "to be designed for punishment, not for rehabilitation or treatment." We disagree.

While it is true that the circumstances and gravity of the minor's offense are always considerations in determining his proper disposition, these factors are not dispositive. (*In re Samuel B., supra*, 184 Cal.App.3d 1100, 1104.) The juvenile court must also consider the minor's age and previous delinquent history, in addition to other relevant and material evidence. (§ 725.5.) Also, because courts have expressed a persistent concern for committing young, unsophisticated youths with individuals who are experienced, sophisticated, criminally oriented types, alternative placement options should be adequately explored. (*In re Anthony M.* (1981) 116 Cal.App.3d 491, 503 [172 Cal.Rptr. 153].) CYA commitment made with some punitive purpose is proper where consistent with the rehabilitative purposes of the Juvenile Court Law and not retributive. (§ 202, subd. (b).)

Tyrone's prior record reveals a pattern of progressively serious delinquent activity. This pattern began with assaultive and aggressively disruptive behavior at school. His mother accepted Tyrone's denials and rejected the school authorities' concerns and recommendation for counseling directed at Tyrone's acceptance of responsibility. Tyrone's successful performance on 1984-1985 probation was, in view of future events, false evidence of true behavioral reformation. In 1987, he burglarized the home of an acquaintance, and stole from a shoe store, during a period when his academic performance at school seriously deteriorated and he abused alcohol. While on furlough from the juvenile ranch, he committed theft, violated curfew, and continued to use alcohol. Contrary to his prior voluntary election to return to the ranch and accept demotion rather than go to court on this theft charge, he attempted to justify his later escape by claiming that he had been tricked into this decision despite his innocence of the charge. To further justify the escape, he alleged that ranch personnel were writing false reports of poor performance, that youth gangs at the ranch did not like him, and that the escape was incited by his two companions. His mother acknowledged that Tyrone should take responsibility for his escape and felt disappointment that he did not accept ranch commitment, but felt that he was a victim of circumstances. Upon recommitment to the ranch, Tyrone dramatically threatened suicide or escape if he was denied his desire to serve

out his term in juvenile hall. In his subsequent meeting with a probation department psychologist, Dr. Salerno, he denied any intentions to threaten or commit suicide. Predictably, the suicide threat greatly concerned his mother, who urged the court to permit Tyrone to remain at home on probation with regular church counseling, after a 90-day term in juvenile hall. However, while in juvenile hall awaiting the dispositional hearing which we review here, Tyrone defaced property with graffiti, lied and otherwise showed disrespect to hall staff, refused to participate in physical education activities, and was generally disruptive. The trial court properly found that such behavior belied Tyrone's claims of repentance and intent to reform.

The accumulated school and probation department reports amply support the trial court's determination that Tyrone's most fundamental need was to replace his existing pattern of self-gratifying manipulation with accountability and a sense of morality. This rehabilitative goal is expressly legitimated by section 202. The trial court wisely reasoned that acquiescence to Tyrone's histrionic demand for transfer from the ranch program to a placement which would impose more permissive rehabilitative demands would be an "unkind leniency" (*In re John S.* (1978) 83 Cal.App.3d 285, 295 [147 Cal.Rptr. 771]) which would "reinforce negative behavior and would do a great disservice to the minor, as well as use resources in an inappropriate way."

The trial court thoroughly considered and rejected existing rehabilitative alternatives. Tyrone's repeated offenses and escape attempts provided ample evidence of the rehabilitative failure of both short- and long-term ranch commitments. Despite optimistic predictions of success by the church counselor enlisted by Tyrone's mother, her long history of abetting Tyrone's denial of responsibility entitled the trial court to put its faith in the more structured, objective counseling programs offered by CYA. (Cf. *In re Samuel B., supra,* 184 Cal.App.3d 1100, 1105 [parent's acceptance of and inability to control minor's misconduct is factor in disposition]; *In re Abdul Y.* (1982) 130 Cal.App.3d 847, 870 [182 Cal.Rptr. 146] [same].) The trial court was also entitled to find that the juvenile hall was not structured to provide the necessary counseling and treatment. (See 1 Cal. Juvenile Court Practice: Delinquent Minors (Cont.Ed.Bar 1981) § 4.1, p. 100.) The trial court properly found that CYA, with its specialized institutions and rehabilitative programs tailored to the delinquent's sophistication and need for security (see 1 Cal. Juvenile Court Practice, *op. cit. supra,* § 10.3 (1981 main text and 1988 supp.)), offered the promise of probable rehabilitative benefit to Tyrone. We find substantial evidence that Tyrone did not qualify as a "nondelinquent or marginally delinquent child" (*In re Aline D., supra,* 14 Cal.3d at p. 567) who presents "primarily a placement problem" (*In re Todd W.*

(1979) 96 Cal.App.3d 408, 418 [157 Cal.Rptr. 802]) who would be an inappropriate case for CYA commitment. (Cf. *In re James H.* (1985) 165 Cal.App.3d 911, 923 [212 Cal.Rptr. 61].)

We find no abuse of discretion and affirm the CYA commitment order.

Capaccioli, Acting P. J., and Cottle, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 8, 1989.