Filed 10/28/15  In re D.S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re D.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>D.S.,<br><br>    Defendant and Appellant. | F071315<br><br>(Super. Ct. No. 513455)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Valli K. Israels, Judge.

Elizabeth J. Smutz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Jennifer M. Poe, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Poochigian, Acting P.J., Franson, J. and Smith, J.

**INTRODUCTION**

On November 1, 2013, a Welfare and Institutions Code section 602 petition was filed in the juvenile court alleging that appellant D.S., then 14 years old, committed assault with a deadly weapon, a knife (Pen. Code, § 245, subd. (a)(1)). The petition also alleged an enhancement for the personal and intentional infliction of great bodily injury (Pen. Code, § 12022.7, subd. (a)).

At the conclusion of a jurisdictional hearing, the court found the allegations true. Appellant was adjudged a ward of the court and was committed to 300 days in juvenile hall, with 79 days credit for time served, to be released under the terms of probation and under the supervision of a probation officer. After appellant's third probation violation, the juvenile court committed him to the California Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ) for a maximum term of 84 months.

On appeal, appellant contends the trial court abused its discretion in committing appellant to the DJJ. We disagree and affirm the judgment.

**FACTS AND PROCEDURAL HISTORY**

*Facts Underlying Welfare and Institution Code Section 602 Petition*[1]

On October 30, 2013, appellant visited a taco stand operated by Noe Acosta. Appellant asked Acosta for tacos and told him he would pay for them the next day. Acosta agreed and gave appellant two tacos. Appellant asked Acosta whether Acosta's brother was a gang member, and called his brother a "scrap," a derogatory term Norteño gang members use to describe Sureño gang members. Acosta asked appellant to leave.

Appellant began yelling expletives at Acosta as he rode away on his bicycle. He later returned to the taco stand with Leonard Zuniga, a known member of the Norteños,

---

[1] The statement of facts underlying the Welfare and Institution Code section 602 petition are derived from the Stanislaus County Probation Department detention report and Probation Officer Noe Garcia's testimony at the dispositional hearing.

who was on probation. Appellant and Zuniga began yelling expletives at Acosta and approached him in a threatening manner.

Acosta's girlfriend, Gladis Arreguin, who was present during the incident, saw appellant strike Acosta once in the neck before fleeing with Zuniga. Unarmed, Acosta went to his vehicle and took a knife out for protection. As appellant and Zuniga returned, Arreguin pushed Acosta into a nearby store.

Acosta was holding his neck with his hand as blood gushed out of it. When he removed his hand from his neck, Arreguin observed a stab wound. She immediately called police. Appellant followed Acosta into the store, where he picked up a chair and threw it at Acosta.

When officers arrived on scene, appellant admitted that he had stabbed Acosta in the neck. Appellant claimed he and Acosta got into a fight after Acosta became hostile and started yelling at him. Zuniga confirmed to police that appellant had stabbed Acosta.

After finding the allegations true, the court committed appellant to 300 days in juvenile hall, with credit for 79 days served, to be released under the terms of probation and under the supervision of the probation officer. In its disposition, the court cautioned appellant that any violation of the terms of his probation could result in his commitment to the DJJ.

### *First Probation Violation*

Appellant admitted that on April 9, 2014, he violated the terms of his probation while in juvenile hall. After becoming upset, appellant made disrespectful comments toward staff. As a result, he was instructed to return to his room, where he began stomping on a desk to the point that it began to detach from the wall. The court ordered appellant to serve an additional 30 days in juvenile hall and to pay restitution for damage to the desk.

### Second Probation Violation

Appellant admitted that in 2014, he violated the terms of his probation. On August 14 and October 9, Appellant tested positive for marijuana. During the 53 days he was enrolled in school, he incurred 12 excused absences, nine unexcused absences and four tardies. On November 3, he was suspended after calling a school resource officer "'you f***ing LOP ass pig.'" Appellant was also discovered to have gang indicia on his Facebook page. Pictures dated September 28 and October 18 showed him displaying gang signs, one of the pictures contained the word "'Norte.'"

The court ordered him to serve an additional 90 days in juvenile hall, of which, 30 days were to be served on the electronic monitoring program. While on the electronic monitoring program, appellant cut off his bracelet. He remained in his home until police responded.

### Third Probation Violation

Appellant admitted that on January 30, 2015, he violated the terms of his probation. Appellant, then 15 years old, and another male, D.A., had an ongoing dispute. Appellant had previously threatened to assault and rob D.A. and his brother. On January 30, appellant punched the victim on the right side of his face, knocking the victim off his scooter and rendering him temporarily unconscious. He then stole the victim's scooter.

During a dispositional hearing on the matter, Probation Officer Noe Garcia testified that given the serious and violent nature of appellant's offenses, and in the interest of public safety, he recommended appellant be committed to the DJJ. He explained appellant was defiant and lost his temper easily; he had been written up five times while in juvenile hall; and was the subject of four incident reports.[2]

---

[2]    Some of the incident reports overlap with appellant's write-ups in juvenile hall, also referred to as "reflections." These reports indicate the following: In November 2013, three reflections were recorded noting appellant's difficulty controlling his anger, as well as his disrespectful disposition toward authority. During this same time period,

Garcia stated the only programs available while in custody at juvenile hall were counseling programs. Appellant had already completed "Aggression Replacement Therapy" (ART) in August 2014, an anger management program, and "Success Through Accountability For Youth" (STAY) in October 2014, which provides counseling on gang awareness. Garcia met with appellant and advised him to stay out of trouble, to stay in school, and to submit clean drug tests. Following this meeting, appellant committed his third probation violation. On two separate occasions during 2014, Garcia directed appellant to get rid of clothing he was wearing which were commonly worn by gang members.

Garcia told the court appellant had been provided with all services available through probation, but did not seem to be benefiting. Garcia explained that gang programs were not available in placement homes, and that placing appellant in such an environment would put the community at risk because he would not be in a secure facility. Garcia determined probation does not use locked placement facilities and that a minor could only be placed in a locked facility if his or her parents paid for it, which was a $10,000 per month cost.

The juvenile court committed appellant to the DJJ for a maximum term of 84 months. The court based its decision on the fact that appellant's commitment to DJJ would promote public safety, explaining appellant's commission of a violent act on an unarmed victim shows a need to keep him away from the community. The court also found appellant would benefit from the DJJ's intense gang intervention program, which was not available in juvenile hall or placement facilities.

_____

appellant was suspended from school after making a racist comment towards a teacher. In December 2013, appellant challenged another minor to a fight.

5.

## DISCUSSION

Appellant contends he will receive no probable benefit from commitment to the DJJ. He also argues the evidence does not support a finding that less restrictive alternatives would be ineffective or inappropriate. We disagree.

The decision of the juvenile court may be reversed on appeal only upon a showing that the court abused its discretion. (*In re Todd W.* (1979) 96 Cal.App.3d 408, 416.) An appellate court will not lightly substitute its decision for that rendered by the juvenile court. We indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them. (*In re Michael R.* (1977) 73 Cal.App.3d 327, 332–333.)

Where a minor is committed to the DJJ, the "evidence . . . must demonstrate probable benefit to the minor from commitment to the [DJJ] and that less restrictive alternatives would be ineffective or inappropriate." (*In re George M.* (1993) 14 Cal.App.4th 376, 379.) "In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law." (*In re Lorenza M.* (1989) 212 Cal.App.3d 49, 53.) Although the primary purpose of the juvenile court is rehabilitation, rather than punishment, juvenile court proceedings must dually impose a sense of responsibility upon the minor for his or her actions, and secure care, treatment, and guidance that will serve the best interests of the minor. (*In re Myresheia W.* (1998) 61 Cal.App.4th 734, 740–741.) In fulfilling these objectives, "the court has broad discretion to choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public." (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.)

We find substantial evidence supports the juvenile court's finding that appellant would benefit from DJJ commitment. Appellant's assault on Acosta was violent and could easily have resulted in death. Appellant stabbed Acosta, who was unarmed, in the

neck, causing him to bleed profusely. After the attack, appellant was placed on probation and attended counseling for anger management.

Appellant violated his probation on three separate occasions. During the third incident, he assaulted and robbed another unarmed male, in an attack that temporarily rendered the victim unconscious. While in juvenile hall, appellant was written-up for multiple rule violations, including defiance against staff and losing his temper.

Pursuant to Welfare and Institutions Code section 202, subdivision (b), where a minor is removed from the custody of his or her parents, the juvenile court may consider family preservation and reunification when determining the disposition of the minor, when those goals are consistent with the minor's best interests *and the best interests of the public*. The juvenile court could reasonably conclude from the foregoing circumstances that the safety of the public required appellant to be committed to a secure facility and they support the court's conclusion that appellant needed placement that lasted 84 months.

The record also contains substantial evidence that appellant would benefit from DJJ commitment. At DJJ, appellant would receive counseling and therapy to address his gang involvement and emotional problems. As Probation Officer Garcia explained during his testimony, appellant had already completed the ART and STAY programs, counseling programs that offer participants education and coping skills. Even after counseling, appellant violated the terms of his probation by committing a violent offense against an unarmed victim and by using gang insignia. From this, the juvenile court reasonably concluded the DJJ's intensive gang intervention program, which is not offered by the juvenile hall or home placement programs, would best serve appellant's rehabilitative needs.

Although appellant claims that DJJ commitment would only permit appellant to become further entrenched with criminally sophisticated juveniles and gang members, appellant was already associating with gang members outside of locked facilities.

Zuniga, who was released on probation at the time of appellant's attack on Acosta, is a known member of the Norteños. Both appellant and his mother expressed that appellant has friends who are gang members. Appellant was found to be in violation of his probation after posting pictures of gang indicia on his Facebook page. He was also admonished by his probation officer for wearing clothing commonly associated with gangs. We reject the inference in appellant's argument that he would have contact with gang members or criminally sophisticated juveniles only by being committed to the DJJ.

The juvenile court considered locked placement as an alternative to DJJ confinement, but found that placement, locked or not, was not an appropriate disposition for appellant. The court reasoned appellant was defiant and violent. He had two violent offenses, one for stabbing Acosta in the neck, and another for assaulting and robbing D.A., knocking him out and then stealing his scooter.

Appellant has demonstrated a pattern of behavioral problems both in and out of custody. The court considered all reasonable alternatives, but deemed them inappropriate, explaining that even after appellant's progress in the ART and STAY programs, he was still using gang insignia. Placement was rejected because of appellant's violent behavior and due to the lack of locked placement facilities, which the court determined were necessary to protect the community.

There is substantial evidence in the record supporting the juvenile court's finding that less restrictive alternatives would be inappropriate or ineffective. While the juvenile court law contemplates a progressively restrictive and punitive series of dispositions, there is no absolute rule that the court may not impose a particular commitment until less restrictive placements have actually been attempted. (*In re Eddie M., supra,* 31 Cal.4th at p. 507; *In re Tyrone O.* (1989) 209 Cal.App.3d 145, 151; *In re Asean D.* (1993) 14 Cal.App.4th 467, 473 [DJJ commitment may be imposed without previous resort to less restrictive alternatives].)

We conclude that the court did not abuse its discretion when it committed appellant to the DJJ.

## DISPOSITION

The judgment is affirmed.