Filed 10/27/23  P. v. J.O. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>J.O.,<br><br>    Defendant and Appellant. | 2d Crim. No. B327240<br>(Super. Ct. No. 17JV00481)<br>(Santa Barbara County) |

J.O. appeals an order by the juvenile court transferring his case, four juvenile wardship petitions (Welf. & Inst. Code, § 602, subd. (a)), to a court of criminal jurisdiction.  (*Id.*, §§ 707, 801.)  The petitions alleged that J.O., then 17 years old, committed attempted murder, assault with a semiautomatic firearm, two counts of assault with force likely to produce great bodily injury, and one count of resisting an executive officer.  We conclude, among other things, that the trial court properly considered the required criteria for a transfer to criminal court and the evidence supports that order.  We affirm.

FACTS

On May 2, 2022, the People filed a juvenile wardship petition alleging that on September 19, 2021, J.O. committed assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b)),[1] a felony, upon John Doe.

On May 24, 2022, the People filed a juvenile wardship petition alleging that on November 11, 2021, J.O. committed attempted murder (§§ 664, 187, subd, (a)) on John Doe 1 (J.D.) and John Doe 2 (J.M.) and he personally discharged a firearm. (§ 12022.53, subd. (c)).  On the same day, the People filed another juvenile wardship petition alleging that on March 8, 2022, J.O. committed attempted murder (§§ 664, 187, subd. (a)) upon John Doe (E.S.) and he caused great bodily injury and personally discharged a firearm.  (§§ 12022.7, 12022.53, subd. (d).)

On June 20, 2022, the People filed a juvenile wardship petition alleging J.O. committed assault with force likely to produce great bodily injury (§ 245, subd. (a)) on June 13, 2022, in juvenile hall on John Doe 1 (A.G.) (count 1); assault with force likely to produce great bodily injury on John Doe 2 (B.P.) (count 2); and resisting an executive officer (§ 69) (count 3.)

The probation department concluded J.O. was not amenable to continued rehabilitation in juvenile jurisdiction because: 1) J.O. was provided with rehabilitation treatment programs, 2) but he did not want to "engage in treatment," and 3) his behavior "escalated to an incredibly dangerous level."

The People moved that all four petitions be transferred to criminal court.  (Welf. & Inst. Code, § 707)  At the juvenile court hearing on the People's motion, Detective Zackery Robbins, a

---

[1] All statutory references are to the Penal Code unless otherwise stated.

gang expert, testified that J.O. is an active member of the West Park criminal street gang. The four warship petitions involve crimes J.O. committed against gang rivals for the benefit of the West Park gang. He said these gang crimes involved criminal sophistication.

On the November 11, 2021, incident, J.O. and his gang initiated a criminally sophisticated gang shooting. They spotted a gang rival near a 7-Eleven store, but they decided not to commit a gang shooting in a public place. They waited until the rival left the area, they followed his car, and then started shooting at a time and place more convenient to the gang. J.O. was criminally sophisticated. He knew that after he committed a gang shooting that he had to promptly get rid of the gun because it could incriminate him. J.O. had an elevated status in the West Park gang. He was known as a "prolific shooter."

Miguel Ochoa, a deputy probation officer, testified that J.O. had been provided multiple rehabilitation programs, but he did not complete them. J.O. had a history of recalcitrance and bad behavior as a ward that made him unsuitable for juvenile jurisdiction.

J.O. called Tiffany Phillips, a supervising deputy probation officer. She testified that J.O. obtained a high school "degree" while in juvenile hall. J.O. took and passed a "post-secondary" educational class. Phillips said, "[H]e's making better choices currently."

The juvenile court found, among other things, that J.O.'s crimes were very serious. They were not "impetuous crimes" or "spur-of-the-moment crimes"; they were "very intentional." J.O. committed them with criminal sophistication. He failed to benefit from the multiple rehabilitation programs that had been

offered to him.  He committed his recent crimes while he was on probation, and he was committed to his gang's culture.  J.O. has "no regard for being on probation" or "the authority of the court." There is no evidence of any "physical or emotional impairment." His criminal activity has been "increasing in terms of violence."

The juvenile court was aware of J.O.'s family history, community environment, and childhood trauma but it found they are not "very compelling" factors in his case.  J.O. chose a criminal lifestyle for his gang.  He made some educational progress.  But that was "only within the last few months" and he has not shown "a propensity to be rehabilitated."

The juvenile court granted the People's motion to transfer J.O.'s case (the four wardship petitions) to a court of criminal jurisdiction pursuant to Welfare and Institutions Code section 707.  It found by clear and convincing evidence that J.O. is not amenable to rehabilitation while under the jurisdiction of the juvenile court.  (*Id.*, § 707, subd. (a)(3).)   J.O. filed for immediate appellate review under Welfare and Institutions Code section 801.

DISCUSSION

*Transferring the Case to Criminal Court*

" '[W]hen a minor has been charged in the juvenile court with any felony allegedly committed when he or she was 16 years of age or older' . . . the 'prosecutor "may make a motion to transfer the minor from juvenile court to a court of criminal jurisdiction." ' " (*Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 185; Welf. & Inst. Code, § 707.)

In determining whether to grant a transfer, the trial court must consider several factors, including: 1) the "degree of criminal sophistication exhibited by the minor" (Welf. & Inst.

4

Code, § 707, subd. (a)(3)(A)(i)); 2) whether " the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction" (*id.*, subd. (a)(3)(B)(i)); 3) the "minor's previous delinquent history" (*id.*, subd. (a)(3)(C)(i)); 4) the "[s]uccess of previous attempts by the juvenile court to rehabilitate the minor" (*id.*, subd. (a)(3)(D)(i)); and 5) the "circumstances and gravity of the offense alleged in the petition to have been committed by the minor" (*id.*, subd. (a)(3)(E)(i)).

Before issuing the order of transfer, the trial court must "find by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (Welf. & Inst. Code, § 707, subd. (a)(3).) The court must also state reasons for that finding. (*Ibid.*) We review the trial court's order for abuse of discretion. (*Kevin P. v. Superior Court, supra*, 57 Cal.App.5th at p. 200.) " 'A decision based on insufficient evidence or the court's " 'erroneous understanding of applicable law' " is subject to reversal.' " (*D.C. v. Superior Court* (2021) 71 Cal.App.5th 441, 451.)

*The Trial Court's Findings*

The trial court followed the standards required by the statute for ordering a transfer to criminal court. It found "by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." It stated the reasons for that finding and weighed the factors mentioned in the statute.

J.O. notes that where the prosecution does not present evidence to support a transfer, it would be an abuse of discretion for a trial court to order one. (*Kevin P. v. Superior Court, supra*, 57 Cal.App.5th at p. 200.) But he has not shown an abuse of discretion here.

5

*J.O.'s Unsatisfactory History with Rehabilitation Programs*

In deciding whether to order a transfer, the trial court may consider the services previously provided to the minor in rehabilitation programs and the minor's conduct in the juvenile detention facility. (Welf. & Inst. Code, § 707, subd. (a)(3)(C)(i), (ii) & (D)(i), (ii).) It must consider the "[s]uccess of previous attempts by the juvenile court to rehabilitate the minor" (*id.*, subd. (a)(3)(D)(i)) and the "minor's previous delinquent history" (*id.*, subd. (a)(3)(C)(i)).

The trial court found: 1) J.O. "didn't take advantage of the rehabilitation programs" he was offered while on four years of probation, and 2) his behavior is not "conducive to rehabilitation." The People presented evidence showing J.O.'s unsatisfactory performance in past youth rehabilitation programs that were provided to him.

Deputy Probation Officer Ochoa was familiar with J.O. because he had supervised him. He testified J.O. had been on probation since 2019. J.O. was provided with several ward rehabilitation programs, including Seeking Safety, mentoring services through CommUnify and Target Interventions. But he did not successfully complete *any* of these programs.

J.O. was provided services at a "boys' camp." He completed some programs there, but "he absconded from his camp commitment," which is why he did not complete his boys' camp programming. He was provided rehabilitation programs while he was not incarcerated. But he did not complete the "programming" he was provided "in the community."

J.O. cites *J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 722, and claims the People must present evidence on the types of rehabilitation programs that are available. But Ochoa testified

6

about numerous rehabilitation programs available to J.O.  The probation department said therapy was available for J.O. but he did not want to participate in it.  Ochoa named the specific rehabilitation programs, including CommUnify mentoring services, Target Interventions, Seeking Safety, Moral Reconation Therapy, Interactive Journaling, Freedom for Youth, and boys' camp programming, which he did not finish because he "absconded" from the camp.

The People note J.O.'s "unlikelihood of rehabilitation was due to [his] failure in attending the programs," not to any failure or omission by the juvenile authorities.  Consequently, the "real problem was not lack of services . . . but a lack of initiative" to take advantage of them.  (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763.)

*Previous Juvenile History and Current Bad Behavior*

The trial court found J.O. had a prior juvenile history.  He had previously been placed on probation for four years.  It found J.O. had committed the charged offenses "while out on probation."  The record shows J.O. had an extensive juvenile history from 2017 to 2022 with prior sustained petitions for attempted second degree robbery (§§ 664, 211), battery by gassing (§ 243.9, subd. (a)), two sustained petitions for assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)), and street terrorism (§ 186.22, subd. (b)(1)).  In 2022 he committed violent assaults on other wards in the juvenile facility.  The court had ordered him not to associate with gang members as part of a prior probation order.  But J.O. disobeyed it and committed crimes with the gang.

As a ward in 2020, J.O. was cited for "taggings found in [his] room."  He was placed in a good behavior "Trust Unit."  But

7

he was removed from that unit for having "contraband"– a "vape pen." His recent violent attacks on other wards were factors in the probation department's recommendation that J.O. be "transferred to Adult Court." It is also a factor the juvenile court may consider in deciding a transfer motion. (Welf. & Inst. Code, § 707, subd. (a)(3)(B)(ii); *D.C. v. Superior Court, supra*, 71 Cal.App.5th at pp. 457-458.) Such violent conduct is inconsistent with an "intent to reform." (*In re Tyrone O.* (1989) 209 Cal.App.3d 145, 153.)

J.O. argues that as he turned 18 years of age, he matured and the People presented no evidence regarding his maturity and ability to reform in juvenile jurisdiction. But that is not the case. The People showed his conduct as an adult did not improve. Ochoa said J.O. turned 18 years of age in August 2022. He testified that since that date J.O. had received disciplinary "write-ups" for "physical altercations" and "verbal altercations." Moreover, on June 13, 2022, just a few weeks before his 18th birthday, J.O. assaulted two wards in the juvenile hall and committed the offense of resisting an executive officer. "Evidence of the youth's conduct is relevant" on a transfer determination (*D.C. v. Superior Court, supra*, 71 Cal.App.5th at p. 457), including the youth's "attraction to violence." (*Id.* at p. 458.)

There is evidence about J.O. obtaining a high school degree and taking college courses. This was evidence of his intellectual abilities, but not a lifestyle change or change in conduct. J.O. did not show he had any desire to leave the gang, any ability to avoid violence, or any understanding of the cause of his violent behavior. The trial court could reasonably find this very brief recent evidence of academic success was substantially outweighed by a long history of his recalcitrance, years of bad

8

behavior as a ward, Ochoa's and Robbins's testimony, and the evidence of his violent assaults he committed in 2022 in juvenile hall. (*In re Tyrone O.*, *supra*, 209 Cal.App.3d at p. 153.) Moreover, the probation department said that, despite being offered treatment programs, J.O. did not want to "engage in treatment."

Relying on *Kevin P. v. Superior Court*, *supra*, 57 Cal.App.5th 173, J.O. claims there should be a reversal of the transfer order. But that case is distinguishable. In contrast to the current case, the *Kevin P.* ward had no prior "criminal history or arrests." (*Id.* at p. 182.) He had no " 'aggressive or predatory behavior' toward others," and "no gang involvement." (*Ibid.*) Unlike J.O., the *Kevin P.* ward had "good citizenship while in juvenile hall" and he engaged "in therapy." (*Id.* at p. 183.) In reversing the transfer order, the *Kevin P.* court said the gravity of the offense cannot be the "sole basis" for making that order. (*Id.* at p. 201.) But the trial court here knew the law and did not solely rely on the gravity of the offenses. It reviewed the statutory factors.

J.O. suggests his prior conduct is not relevant evidence regarding his future rehabilitation. He is not correct. The trial court could properly consider J.O.'s history of bad conduct, violence, and unsatisfactory performance in rehabilitation programs as relevant on whether he would benefit from future rehabilitation. (*D.C. v. Superior Court*, *supra*, 71 Cal App.5th at pp. 457-458; *In re Tyrone O.*, *supra*, 209 Cal.App.3d at p. 153; *In re Lynna B.* (1979) 92 Cal.App.3d 682, 700.) Past performance is often "the best indication" of future performance. (*Lynna B.*, at p. 700.) This is why the transfer statute requires consideration of the success of "*previous attempts* by the juvenile court to

9

rehabilitate the minor" in determining whether the ward could benefit from further rehabilitation efforts or should be transferred to criminal court.  (Welf. & Inst. Code, § 707, subd. (a)(3)(D)(i), italics added.)

*J.O.'s Dedication to Gang Culture*

The trial court found: 1) J.O. is currently "very enmeshed in gang culture," and 2) he even exhibited this gang behavior while in juvenile hall.  The People presented evidence to support these findings.

J.O. attacked a rival gang member in 2022 while in juvenile hall.  Detective Robbins testified that on June 13, 2022, J.O. committed a "gang motivated" attack on the victim.  The trial court could reasonably find that, despite being in juvenile detention, J.O. decided to commit this attack for the benefit of his gang and its culture.

There was no evidence that J.O.'s association with the gang was temporary, inadvertent, or a result of a "minor's impetuosity."  (Welf. & Inst. Code, § 707, subd. (a)(3)(A)(ii).)  J.O. is an "active" gang member, known to be a "prolific shooter."  He obtained an "elevated status within [the] West Park [gang]." Robbins said J.O. used gang signals.  J.O. "bragged about his affiliation with [the] West Park [gang]."

*Criminal Sophistication*

A factor to be considered by the trial court is the "degree of criminal sophistication exhibited by the minor."  (Welf. & Inst. Code, § 707, subd. (a)(3)(A)(i).)

The trial court found J.O. committed crimes for his gang exhibiting "criminal sophistication."  The evidence supports this finding.

Robbins testified that J.O.'s 2022 attack on a rival gang member at the juvenile hall was "criminally sophisticated" involving "preplanning." J.O. and his gang were criminally sophisticated. In a 2021 West Park gang shooting, "multiple people" were "patrolling a West Park territory" and were "also trying to get rid of the firearm" to "eliminate . . . the possibility of being tied to the shooting." J.O. exhibited criminal sophistication because he "tried to get rid of the firearm" to prevent himself from being tied to the shooting. Robbins testified that the West Park gang's November 11, 2021, shooting offense showed criminal sophistication. The gang identified its victim, but decided not to immediately start shooting near a 7-Eleven store. It "waited for the victim[] to leave." It then followed the victim's car before deciding to commence the attack.

*The Gravity of the Offenses*

A factor the court considers before making a transfer order is "the gravity of the offense alleged in the petition to have been committed by the minor." (Welf. & Inst. Code, § 707, subd. (a)(3)(E)(i).)

The trial court found the petitions alleged offenses by J.O. that involved "very serious offenses." That finding is supported because the petitions involved the violent offenses of attempted murder and assault with a semiautomatic firearm. Here there was no evidence of any "extenuating or mitigating circumstances" that would reduce the serious and violent nature of J.O.'s conduct. (*People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 686.) The goal of these crimes involved the use of potentially deadly force deliberately directed against gang rivals.

11

*Physical and Emotional Impairment and Other Issues*

J.O. contends the trial court erred by finding no evidence of physical or emotional impairment.

J.O. had the opportunity to present mitigating evidence about any physical or mental disorder he suffered from if he believed it was relevant. (*People v. Superior Court (Jones)*, *supra*, 18 Cal.4th at p. 686.) But he did not present evidence on such issues at the evidentiary hearing. That supports the trial court's finding.

J.O. claims a probation department report noted that, when he was 14 years old, a therapist wanted to discuss Attention-Deficit/ Hyperactivity Disorder (ADHD) with him. He refused to participate in therapy. But J.O. apparently did not consider this evidence to be relevant to the transfer issue. In his written opposition to transfer, he did not mention this issue or claim he had a disabling physical or mental disorder. Moreover, J.O. has not cited to any current medical evidence that shows he has a current medical disorder that constitutes a substantial factor impacting his current dangerous behavior.

At the hearing J.O. did not present evidence of any family history factors as causal factors or mitigating evidence. But the trial court considered this evidence from probation department reports. It found his family history, community environment, and childhood trauma were "not very compelling" factors in his case. Instead, J.O. has voluntarily chosen the criminal lifestyle of his gang. He actively engages "in gang activities to further the goals of the gang that he's a part of" and he is "proud of [those] activities." Robbins's testimony supports that finding.

*Qualified Witnesses*

J.O. contends the People did not present qualified witnesses to testify about him and his ability to benefit from rehabilitation programs. We disagree.

The trial court found Robbins was a qualified expert. His testimony about J.O.'s criminal sophistication, his gang, its culture, and J.O.'s dedication to that violent culture is *uncontradicted*. Ochoa knew the various rehabilitation programs. He was in the best position to evaluate J.O.'s progress in rehabilitation because he knew J.O. and he supervised him.

Given the evidence, the trial court did not err by issuing the order.

We have reviewed J.O.'s remaining contentions and we conclude he has not shown grounds for a reversal.

DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

CODY, J.

13

Gustavo E. Lavayen, Judge

Superior Court County of Santa Barbara

_____

Esther R. Sorkin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.