I.Filed 12/19/25  In re B.R. CA6

## II.NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re B.R., a Person Coming Under the Juvenile Court Law. | H052460<br>(Monterey County<br>Super. Ct. No. 24JV000341) |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>B.R.,<br><br>Defendant and Appellant. | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>NO CHANGE IN JUDGMENT |

Appellant's petition for rehearing is denied.  The court orders that the opinion filed November 24, 2025 be modified as follows, without change in the judgment: The word "independent" in the third sentence of the second full paragraph on page 7 is deleted.

_____

Grover, J.

_____

Greenwood, P. J.

_____

Lie, J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re B.R., a Person Coming Under the Juvenile Court Law. | H052460 (Monterey County  Super. Ct. No. 24JV000341) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>B.R.,<br><br>        Defendant and Appellant. | |

B.R. challenges a dispositional order committing him to the Monterey County Probation Department Youth Center Program (Youth Center) after he admitted to shooting into an inhabited dwelling.  He contends the juvenile court's order committing him to the Youth Center was unwarranted and exceeded the least restrictive placement. Finding no error, we will affirm the dispositional order.

## III.   TRIAL COURT PROCEEDINGS

The police took B.R. into custody for discharging five gunshots in a residential neighborhood in a presumed gang-related shooting.  B.R. fired multiple rounds at an inhabited house and ran from the scene with three other juvenile males after shattering the front window.  The Monterey County District Attorney filed a Welfare and Institutions Code section 602 petition, alleging one count of shooting at an inhabited

dwelling (Pen. Code, § 246), one count of possessing a firearm as a minor (Pen. Code, § 29610), one count of carrying a loaded firearm as the nonregistered owner (Pen. Code, §§ 25850, subds. (a) & (c)(6)), and one count of carrying a concealed firearm as the nonregistered owner.  (Pen. Code, §§ 25400, subds. (a)(2) & (c)(6).)

B.R. was released into his parents' custody on electronic monitoring but was again detained after twice violating his release conditions.  (After failing to regularly charge his monitoring unit, he was found in possession of a marijuana wax vape pen; he was also found to have been selling fireworks from his home in violation of the Health and Safety Code.)  B.R.'s parents worked long hours and were coping with the recent deaths of two immediate family members.  After B.R. admitted the allegations in the petition, the court found the allegation based on shooting into an inhabited dwelling to be true and dismissed the remaining allegations.

The probation officer initially recommended that the court declare B.R. a ward for 24 months, release him on supervised probation to his parents' custody after serving 180 days in detention (with 99 days of actual and constructive custody credits), and order victim restitution for replacement of a shattered home window.  After B.R. objected to the recommended commitment term as inapplicable to minors, the probation officer and prosecution requested a two-week continuance to obtain a Youth Center assessment.  The court continued the dispositional hearing to receive an assessment from the Interagency Placement Committee Multidisciplinary Team (IPC MDT).  The probation officer thereafter recommended that the court declare B.R. a ward of the court for two years and adopt IPC MDT's suggested commitment to the Youth Center for 479 days, with credit for 114 days, for a total of 365 custody days remaining.

At the continued hearing, B.R.'s counsel opposed the Youth Center commitment, arguing reasonable efforts had not been made to prevent B.R.'s removal from his home, and there had been no attempt to rehabilitate him in a less secure setting.  Counsel emphasized B.R. was expected to graduate high school on time, had multiple jobs, and

2

had two parents at home. The prosecutor countered that the dangerous nature of B.R.'s offense and community safety concerns made the Youth Center the least restrictive reasonable placement.

The juvenile court adopted the recommendation and committed B.R. to the Youth Center. The court acknowledged B.R.'s work ethic and improved grades at juvenile hall, but also noted B.R.'s gang associations and the very serious facts of the case. The court declared the offense a felony with a maximum term of confinement of five years. The court ultimately concluded that B.R.'s welfare required removal despite reasonable efforts because both parents were working and managing the home after two recent deaths in the family.

## IV. DISCUSSION

B.R. argues the juvenile court abused its discretion by committing him to the Youth Center because removal from his parents' custody was not supported by substantial evidence and the court did not select the least restrictive placement. He asserts that the juvenile court was improperly influenced by "stereotyping, prosecutorial vindictiveness, and undue emphasis on public outcry," and that he would have received a more favorable disposition absent cumulative error.

### A. THE YOUTH CENTER COMMITMENT WAS NOT AN ABUSE OF DISCRETION

The dual purpose of juvenile delinquency laws is to serve a juvenile ward's best interests through rehabilitation and to protect the public. (*In re Charles G.* (2004) 115 Cal.App.4th 608, 614 (*In re Charles G.*).) California law requires that wards of the juvenile court "receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances," including punishment consistent with rehabilitative objectives. (Welf. and Inst. Code, § 202, subd. (b); undesignated statutory references are to this Code.)

A juvenile court may commit a minor adjudged a ward of the court to out-of-home placement at a community care facility, juvenile home, ranch, or camp. (§§ 202,

subd. (e), 727, subds. (a) & (e), 730, subd. (a).)  The juvenile court must consider the minor's age, the circumstances and gravity of the committed offense, and any previous delinquent history when choosing the proper placement.  (§ 725.5.)  The court is required to "consider 'the broadest range of information' in determining how best to rehabilitate a minor and afford him adequate care."  (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329 (*In re Robert H.*).)

We review a juvenile court's dispositional order for abuse of discretion.  (*In re Robert H.*, *supra*, 96 Cal.App.4th at pp. 1329–1330.)  We indulge all reasonable inferences to support the decision of the juvenile court and will not disturb the court's findings when substantial evidence supports them.  (*In re Tyrone O.* (1989) 209 Cal.App.3d 145, 151.)

### 1.  Removal from Parental Custody

A court may not remove a ward of the court from the physical custody of a parent or guardian unless, after a hearing, it finds one of the following:  "(1) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor.  [¶]  (2) That the minor has been tried on probation while in custody and has failed to reform.  [¶]  (3) That the welfare of the minor requires that custody be taken from the minor's parent or guardian."  (§ 726, subd. (a).)  The record must reflect the juvenile court's reasoning either explicitly or implicitly.  (*In re Kenneth H.* (1983) 33 Cal.3d 616, 620–621 (*In re Kenneth H.*).)  B.R. argues the court's removal findings are not supported by substantial evidence, specifically that there is no evidence reasonable efforts were made or services provided to prevent removal throughout the pendency of the case.  He also argues the court could not have reasonably inferred both parents lacked the ability to supervise B.R. making continuance in the home contrary to his welfare.

4

The court had twice released B.R. to his parents' custody on electronic monitoring before the disposition hearing. B.R. violated the conditions of release on both occasions.[1] He repeatedly failed to charge his monitoring unit and possessed a marijuana wax vape pen; he also made numerous unauthorized movements and sold illegal fireworks from his home. The juvenile court observed that B.R.'s family was coping with the recent deaths of B.R.'s older brother and grandmother during that time. His parents alternated care-taking duties because they both worked long hours. And B.R.'s father did not believe B.R. was the shooter. Based on the foregoing, the court found B.R.'s best interests required removal despite reasonable efforts, by implication because the parents could not provide proper supervision. (See *In re Kenneth H.*, *supra*, 33 Cal.3d at pp. 620–621.) Substantial evidence supports the juvenile court's determination that B.R.'s parents, despite being loving and supportive, could not provide the proper maintenance required for his well-being. (§ 726, subd. (a).)

B.R. argues the court's findings effectively penalized his parents for being hard-working, and reflect racial stereotypes of immigrant families unable to raise law-abiding teenagers. At the disposition hearing, the juvenile court acknowledged that both parents worked hard at their jobs and were coping with recent deaths in the family, and it determined the parents could not at that time properly supervise B.R. Nothing in the record shows the court relied on racial stereotypes in lieu of facts to make that determination, and we see no abuse of discretion in ordering removal. (*In re Robert H.*, *supra*, 96 Cal.App.4th at pp. 1329–1330.)

---

[1] We note that because an interpreter was not available to assist B.R.'s father at the detention hearing after the second violation, he communicated with the court through B.R.'s counsel. The record confirms the juvenile court was aware of the isolated incident of interpreter unavailability.

## 2. Least Restrictive Placement

The statutory scheme for juvenile offenders "contemplates a progressively restrictive and punitive series of disposition orders," including supervised home placement, foster or group home placement, ranch, camp, and ultimately a more restrictive custodial placement. (*In re Aline D.* (1975) 14 Cal.3d 557, 564; §§ 727, 730, 875.) Only when committing a minor to a secure facility is the court required to find that no less restrictive alternative disposition is suitable. (§ 875, subd. (a)(3).) While there must be evidentiary support for the juvenile court's determination that reasonable alternative dispositions were considered and rejected, the court is not required to expressly state its consideration of and reasons for rejecting less restrictive placements. (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1159.) The court need not exhaust alternatives in sequence and does not abuse its discretion by ordering the most restrictive placement before other options. (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.)

B.R. argues the trial court abused its discretion because the Youth Center was not the least restrictive placement consistent with B.R.'s rehabilitative needs and public safety. B.R. asserts he had no prior record, was working multiple jobs, was on track to graduate high school, and that his violations while released on electronic monitoring were "minor." He argues the court placed an undue emphasis on neighborhood concern about the shooting versus legislative determinations about the gravity of the offense.

At the disposition hearing, the juvenile court considered less restrictive placements than the Youth Center. B.R.'s counsel requested supervised probation on electronic monitoring based on B.R.'s school progress, work ethic, ambition, and supportive and intact family. The juvenile court carefully considered the serious nature of B.R.'s actions, his suspected gang associations, as well as improvements to his behavior and grades while housed at juvenile hall. (See § 725.5.) The court then weighed the best interests of B.R. and community safety, and reasonably concluded the objectives of

6

juvenile law could not be accomplished through electronic monitoring. (*In re Charles G.*, *supra*, 115 Cal.App.4th at p. 614.)

B.R. accuses the probation officer and prosecution of acting vindictively when they changed their commitment recommendation from 180 days in detention to 479 days at the Youth Center. Vindictive prosecution involves an increase in charges in response to a defendant's exercise of constitutional rights. (*Short v. Superior Court* (2019) 42 Cal.App.5th 905, 915 (*Short*).) A rebuttable presumption of vindictiveness arises where charges subjecting the defendant to a greater potential penalty are added after the exercise of protected rights. (*Ibid.*)

After B.R.'s counsel pointed out that the initial 180-day commitment recommendation was based on the erroneous application in a juvenile proceeding of Penal Code section 1203.095 (mandating six months custody as a condition of probation for certain offenses), the probation officer and prosecution requested additional time to obtain a Youth Center assessment. The probation officer then adopted IPC MDT's recommendation to commit B.R. to the Youth Center. As the probation officer and prosecution increased the commitment recommendation based on the independent review by IPC MDT, there is no presumption of prosecutorial vindictiveness here. (See *Short*, *supra*, 42 Cal.App.5th at p. 915.)

We conclude the juvenile court did not abuse its discretion by committing B.R. to the Youth Center. (*In re Robert H.*, *supra*, 96 Cal.App.4th at pp. 1329–1330.) Given that we have found no abuse of discretion in the court's removal and commitment findings, there is also no cumulative error in this record. (See *People v. Capers* (2019) 7 Cal.5th 989, 1017.)

## B. Authority to Impose a Restitution Fine Is Not Ripe for Challenge

At the time the dispositional order was made, a restitution fine was mandatory. (Former § 730.6, subds. (a)(2)(A), (b)(1).) Despite the probation officer's recommendation to that effect, the juvenile court did not impose a restitution fine here.

7

Effective January 1, 2025, Assembly Bill No. 1186 (2023–2024 Reg. Sess.) amended section 730.6 by removing the requirement that a juvenile court impose a restitution fine, although it remains permissible if the court finds "that the minor has the financial ability to pay the fine." (§§ 730.6, subd. (a)(2), 730.5.) Based on that amendment, B.R. initially asked that we direct the juvenile court not to impose a restitution fine on B.R. in the future. But the juvenile court neither imposed a restitution fine nor suggested that it ever will. Perhaps recognizing that courts decide only justiciable controversies that are ripe for decision, at oral argument counsel withdrew B.R.'s request concerning the propriety of a hypothetical restitution fine.

## V.    DISPOSITION

The dispositional order is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Lie, J.

H052460
*The People v. B.R.*